BOARD OF SELECTMEN OF FRAMINGHAM & another[1] *vs.* MUNICIPAL COURT OF THE CITY OF BOSTON & another.[2]

Middlesex.    November 10, 1977. — December 2, 1977.

Present: HENNESSEY, C.J., BRAUCHER, WILKINS, LIACOS, & ABRAMS, JJ.

*Search and Seizure.   Constitutional Law,* Search and seizure, Use in civil proceeding of illegally obtained evidence.  *Public Employment. Municipal Corporations,* Police.  *Police.*

Where an off-duty police officer was found with a bullet wound outside his home and said he was shot by an unknown assailant who was also outside his home, a subsequent warrantless search of his home by the police was not justified by exigent circumstances. [785-786]

Evidence seized from a police officer's home in violation of the Fourth Amendment to the United States Constitution was not admissible in an administrative hearing to remove the officer. [786-788]

Evidence in a removal proceeding before the Civil Service Commission, apart from evidence obtained in violation of the Fourth Amendment, was insufficient to warrant the discharge of a police officer. [788]

CIVIL ACTION commenced in the Superior Court on June 9, 1976.

The case was heard by *Larkin,* J., a District Court judge sitting under statutory authority.

The Supreme Judicial Court granted a request for direct appellate review.

[1] Civil Service Commission.

[2] Francis Martinis.

*Aaron K. Bikofsky* for the Board of Selectmen of Framingham (*Thomas Miller*, Assistant Attorney General, for the Civil Service Commission, with him).

*Louis A. Guidry* for Francis Martinis.

*Michael B. Latti*, Special Assistant Attorney General, for the Municipal Court of the City of Boston.

BRAUCHER, J.    The Civil Service Commission (commission) affirmed the action of the board of selectmen of Framingham (board) in discharging a police officer. A judge of the Municipal Court of the City of Boston set aside the decision of the commission, and the decision of the Municipal Court was affirmed in the Superior Court in an action in the nature of certiorari. The board and the commission appealed, we allowed the application of the officer and the commission for direct appellate review, and we affirm. We hold that the warrantless search of the officer's home was illegal, that evidence obtained as a result of the search was not admissible in evidence, and that the commission's decision was not supported by substantial admissible evidence.

We summarize the pertinent facts recited in the memorandum of decision of the Municipal Court judge, based on the record of the commission proceedings. The officer was shot and wounded at his home about 4:00 A.M. on August 9, 1973. He was found in front of the house next door and taken by the police to a hospital, where he remained for an appreciable period. He asserted to a neighbor and to the police that, as he stood in his doorway, he was shot by an unknown assailant standing on the sidewalk some ten feet away, and he persisted in this basic story, with minor variations and inconsistencies, during repeated questioning. On his recovery, the board charged (1) that, having personal knowledge of the course of events, he refused to state the facts to the investigating officers, and (2) that he had refused to cooperate in an official investigation at the direction of his superior officer, and was therefore guilty of insubordination.

At a hearing on those charges before the board, principal

reliance was placed on evidence obtained by the police in a warrantless search of the officer's home without his consent. Before the search all the doors and windows of the house were found to be thoroughly secured. The police found the casing of a spent bullet in the vestibule and an automatic pistol concealed under clothing in a drawer of a dresser in a bedroom on the second floor. There was evidence that the bullet taken from the officer's body, and the casing, were fired from that pistol.

The judge ruled that the search was illegal, the resulting evidence was inadmissible, and there was insufficient other evidence to sustain the charges. He ordered that the officer be reinstated without loss of compensation. In the Superior Court that decision was affirmed.

1. *The search.* The board and commission contend that the warrantless search of the officer's home was justified by exigent circumstances. Inconsistencies between the officer's statements and circumstances the police observed, they say, would have put a reasonable person in fear of his safety, and the police were reasonable in making a "limited search" of the home to be certain their safety was not in jeopardy. The commission's hearing officer found that the officer lived alone and that the police gained access to his home about 4:30 A.M. on the date of the shooting.

When searches are conducted without a warrant, the burden is on the government to show that a particular search falls within a narrow class of exigent circumstances. Under the exception for exigent circumstances, there must be a showing that it was impracticable for the police to obtain a warrant, and the standards as to exigency are strict. See *Commonwealth* v. *Forde,* 367 Mass. 798, 800-801 (1975), and cases cited. A warrantless search of a dwelling is particularly subject to constitutional scrutiny. *Commonwealth* v. *Hall,* 366 Mass. 790, 801-804 (1975). *Commonwealth* v. *Cohen,* 359 Mass. 140, 143-144 (1971). Cf. *Boston* v. *Ditson,* 4 Mass. App. Ct. 323, 327-328 (1976), cert. denied, 429 U.S. 1057 (1977) (administrative search).

Here the officer was found outside his home and said he

was shot by an unknown assailant who was also outside. He was taken to the hospital, and the doors and windows of the house were secured. There was no emergency, no hot pursuit of a fleeing felon, no imminent removal or destruction of evidence, no search incident to lawful arrest, and no seizure of evidence of crime in plain view. The hypothesis that the assailant might have taken refuge in the house may be more than "a flight of imaginative fancy." See *Commonwealth* v. *Hawkes,* 362 Mass. 786, 789 (1973). But it falls far short of establishing urgent need to search dresser drawers in a second floor bathroom.

We conclude that the search was unreasonable and violated both the Fourth Amendment to the Constitution of the United States and art. 14 of the Declaration of Rights of the Constitution of Massachusetts.

2. *Admissibility of the evidence.* The rule excluding evidence seized in violation of the Fourth Amendment was recently discussed in *United States* v. *Janis,* 428 U.S. 433, 443-447 (1976). The Court said, "In the complex and turbulent history of the rule, the Court never has applied it to exclude evidence from a civil proceeding, federal or state." *Id.* at 447. The Court distinguished forfeiture proceedings as "quasi-criminal," citing *One 1958 Plymouth Sedan* v. *Pennsylvania,* 380 U.S. 693, 701 (1965), and *Boyd* v. *United States,* 116 U.S. 616, 634 (1886). In the *Janis* case, evidence was seized by State officers acting in good faith under an invalid search warrant. The evidence was held admissible in a civil action for the refund or collection of Federal taxes, primarily because "the deterrent effect of the exclusion of relevant evidence is highly attenuated when the 'punishment' imposed upon the offending criminal enforcement officer is the removal of that evidence from a civil suit by or against a different sovereign." *Id.* at 457-458. The Court referred to "judicial integrity" as "a relevant, albeit subordinate factor." *Id.* at 458 n.35.

"There is substantial authority for extending exclusionary rules to situations in which the government is opposing the individual in a noncriminal milieu. . . . But the

rationale is doubtful for going so far as to exclude evidence resulting from unconstitutional governmental action, including deprivation of counsel, when the evidence is sought to be used in a purely civil proceeding by one private party against another. . . . A deterrence function is not served by exclusion on such occasions since governmental officials such as police involved in the violations would have no interest in the outcome of possible future civil actions; nor is exclusion necessary to preserve 'judicial integrity,' in the sense familiar in arguments about criminal cases, since in these civil actions the government is not being permitted to take advantage of its own lawbreaking to punish the victim of that illegality." *Carey* v. *Zayre of Beverly Inc.,* 367 Mass. 125, 129-130 (1975), and authorities cited. In the present case the government is opposing the individual in a noncriminal milieu; this is not a purely civil proceeding by one private party against another. We pass the deterrence function, since we think "judicial integrity" is at stake in the sense that the government is seeking to take advantage of its own lawbreaking to punish the victim of that illegality. There is no finding of "good faith" as those words are used in *United States* v. *Janis, supra,* and it is doubtful whether such a finding could be sustained on the present record. Contrast *Boston* v. *Ditson,* 4 Mass. App. Ct. 323, 330-336 (1976), cert. denied, 429 U.S. 1057 (1977), where the remedy sought by the city was compensatory only.

The rule excluding evidence obtained in an illegal search has been applied by other courts to cases of discharge of public employees. *Powell* v. *Zuckert,* 366 F.2d 634, 640 (D.C. Cir. 1966). *Saylor* v. *United States,* 374 F.2d 894, 898-901 (Ct. Cl. 1967). *Rinderknecht* v. *Maricopa County Employees Merit Sys.,* 21 Ariz. App. 419, 422, vacated by reason of settlement, 111 Ariz. 174 (1974). In the present circumstances, the protection of the privacy of the individual and the necessity for preserving confidence in the processes of government, rather than encouraging contempt for them, require that the evidence be held inadmissible. We reach this result as matter of Massachusetts

law, even though it may not be required by the Federal Constitution.

3. *Other evidence.* The board and the commission contend that the decision of the commission was based on substantial evidence apart from the evidence obtained in the illegal search. They rely on inconsistencies in the officer's explanation of the details of the shooting, on his inability to explain how he got from where he was shot to where he was found, about seventy feet away, and on the absence of bloodstains near his doorway. The judges of the Municipal Court and the Superior Court thought that this evidence, apart from the fruits of the illegal search, was insufficient to sustain the charges. We agree.

*Judgment affirmed.*