COMMONWEALTH vs. GEORGE L. UPTON.

Barnstable. October 2, 1984. — April 1, 1985.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, LYNCH & O'CONNOR, JJ.

*Probable Cause. Constitutional Law*, Search and seizure, Probable cause. *Search and Seizure*, Affidavit, Probable cause, Motor home.

General Laws c. 276, § 2B, requires the suppression of evidence seized pursuant to a search warrant where the affidavit submitted with the application for the warrant does not show probable cause for the search. [364-369]

Under art. 14 of the Massachusetts Declaration of Rights, the existence of probable cause for issuance of a search warrant is to be determined according to the principles developed under *Aguilar* v. *Texas*, 378 U.S. 108 (1964), and *Spinelli* v. *United States*, 393 U.S. 410 (1969), rather than according to the "totality of the circumstances" test announced in *Illinois* v. *Gates*, 462 U.S. 213 (1983). [369-377] LYNCH, J., with whom NOLAN, J., joins, dissenting.

In the circumstances, the affidavit of a police officer who had spoken by telephone with an anonymous informant was not sufficient under art. 14 of the Massachusetts Declaration of Rights to establish probable cause for the issuance of a search warrant. [377-378] LYNCH, J., with whom NOLAN, J., joins, dissenting.

It was held that, in the circumstances, evidence seized in the search of a motor home used as a residence and parked on the private property of the occupant's family could not be admitted under an exception to the warrant requirement of art. 14 of the Massachusetts Declaration of Rights. [378-380]

INDICTMENTS found and returned in the Superior Court Department, three on October 7, 1980, and two on March 10, 1981.

Following review by this court reported in 390 Mass. 562 (1983), there was a rehearing pursuant to an order of the Supreme Court of the United States.

*Nancy Gertner* (*David Kelston* with her) for the defendant.

*Philip A. Rollins*, District Attorney (*W. James O'Neill & Michael D. O'Keefe*, Assistant District Attorneys, with him) for the Commonwealth.

*Barbara A. H. Smith*, Assistant Attorney General, for the Attorney General, intervener.

*William C. O'Malley*, District Attorney for the Plymouth District, & others, amici curiae, submitted a brief.

*Maureen B. Brodoff*, for Committee for Public Counsel Services, amicus curiae, submitted a brief.

*Stephen R. Kaplan*, amicus curiae, submitted a brief.

WILKINS, J. We consider the defendant's State law challenges to the denial of his motions to suppress evidence seized pursuant to a search warrant. When this case was before us for the first time, we concluded that the search was unreasonable in violation of the Fourth Amendment to the Constitution of the United States because there was no demonstrated probable cause to issue the search warrant. *Commonwealth* v. *Upton*, 390 Mass. 562, 563 (1983). In a per curiam opinion, the Supreme Court of the United States reversed our judgment, concluding that there was a proper showing of probable cause under the "totality of the circumstances" test articulated in *Illinois* v. *Gates*, 462 U.S. 213 (1983). *Massachusetts* v. *Upton*, 466 U.S. 727 (1984). The Supreme Court remanded the case to us for further proceedings consistent with its opinion. *Id.* at 735.

The State law issues presented to us include the questions whether probable cause to issue a search warrant should be determined by a stricter standard in this Commonwealth than under the Fourth Amendment and whether evidence seized without probable cause may nevertheless be admitted against a defendant. The defendant argues both these questions on statutory and constitutional grounds. We conclude that (1) there is a statutory exclusionary rule requiring the exclusion of evidence seized without a showing of probable cause (unless there is some other basis for justifying the search), (2) the test for determining probable cause is stricter under art. 14 of the Declaration of Rights of the Massachusetts Constitution than under the Fourth Amendment, and (3) the application for the search warrant in this case did not demonstrate probable cause.

1. *The legal consequences of a lack of probable cause.* The Commonwealth argues that evidence seized pursuant to a search

warrant should be admissible, regardless of whether there was probable cause, because this court has never accepted the concept of an exclusionary rule under the State Constitution when a search violated the requirements of art. 14 of the Declaration of Rights. Although our decision in this case does not turn on the existence or nonexistence of a constitutional exclusionary rule, the Commonwealth has correctly characterized this court's historical position.

During the Nineteenth Century, as a matter of common law and at least implicitly as a matter of State constitutional law, relevant evidence unlawfully obtained was admissible in evidence in this Commonwealth. See *Commonwealth* v. *Dana*, 2 Met. 329, 337 (1841); *Commonwealth* v. *Certain Lottery Tickets*, 5 Cush. 369, 374 (1850); *Commonwealth* v. *Certain Intoxicating Liquors*, 4 Allen 593, 600 (1862); *Commonwealth* v. *Tibbetts*, 157 Mass. 519, 521 (1893); *Commonwealth* v. *Acton*, 165 Mass. 11, 13 (1895); *Commonwealth* v. *Smith*, 166 Mass. 370, 376 (1896). The constitutional question was thought to have been settled by these and other authorities when the question was reconsidered in *Commonwealth* v. *Wilkins*, 243 Mass. 356, 359 (1923), subsequent to decisions of the Supreme Court of the United States (*Weeks* v. *United States*, 232 U.S. 383, 393-394 [1914]; *Boyd* v. *United States*, 116 U.S. 616, 638 [1886]), holding inadmissible in the Federal courts property seized in violation of a defendant's Fourth Amendment rights. This court noted that the Fourth Amendment did not apply to State court proceedings and, viewing the fact of an unlawful seizure of evidence as disconnected from the trial, declined to follow the decisions under the Fourth Amendment. *Commonwealth* v. *Wilkins, supra* at 360-362. "We prefer to adhere to our rule, which makes the competency of evidence depend upon its inherent probative value rather than upon outside circumstances, and which leaves the redress of grievances for invasion of constitutional rights to the usual and adequate provisions of the civil and criminal law." *Id.* at 362-363.

We need not decide in this case whether, as a matter of State constitutional or common law, we should now take a dif-

ferent position on the exclusion of evidence seized pursuant to a search warrant issued without probable cause.[1] We conclude instead that G. L. c. 276, § 2B, provides a statutory prohibition against the admission of such evidence.

General Laws c. 276, § 2B,[2] governing the content of affidavits submitted in support of applications for search war-

---

[1] Were we to reach this question, we would have to consider this court's opinion in *Selectmen of Framingham* v. *Municipal Court of the City of Boston*, 373 Mass. 783 (1977). There, solely "as matter of Massachusetts law," we held evidence seized in an unconstitutional, warrantless search to be inadmissible in a civil proceeding brought by the government to discharge an employee whose constitutional rights had been violated. *Id.* at 787-788.

[2] Section 2B, as amended by St. 1965, c. 384, provides:

"A person seeking a search warrant shall appear personally before a court or justice authorized to issue search warrants in criminal cases and shall give an affidavit in substantially the form hereinafter prescribed. Such affidavit shall contain the facts, information, and circumstances upon which such person relies to establish sufficient grounds for the issuance of the warrant. The person issuing the warrant shall retain the affidavit and shall deliver it within three days after the issuance of the warrant to the court to which the warrant is returnable. Upon the return of said warrant, the affidavit shall be attached to it and shall be filed therewith, and it shall not be a public document until the warrant is returned.

"The affidavit in support of the application for a search warrant shall be in substantially the following form:

"THE COMMONWEALTH OF MASSACHUSETTS.
"(COUNTY), ss.                                    (NAME) COURT
                                    . . . . . . . , 19 . .

"I, (name of applicant) being duly sworn, depose and say:
"1. I am (describe position, assignment, office, etc.).
"2. I have information, based upon (describe source, facts indicating reliability of source and nature of information; if based on personal knowledge and belief, so state).
"3. Based upon the foregoing reliable information (and upon my personal knowledge) there is probable cause to believe that the property hereinafter described (has been stolen, or is being concealed, etc.) and may be found (in the possession of A. B. or any other person) at premises (identify).
"4. The property for which I seek the issuance of a search warrant is the following: (here describe the property as particularly as possible).
"*Wherefore*, I respectfully request that the court issue a warrant and order of seizure, authorizing the search of (identify premises and the persons to be searched) and directing that if such property or evidence or any part

rants, was enacted in 1964. St. 1964, c. 557, § 3. Two years later a case reached this court involving the question whether evidence seized pursuant to a search warrant would be admissible if the application for the warrant did not meet the requirements of G. L. c. 276, §§ 2A, 2B, and 2C, but sworn testimony before the magistrate, supplementing the application, provided probable cause to issue the warrant. *Commonwealth* v. *Monosson*, 351 Mass. 327 (1966). Recognizing that "[t]he principal issue for decision is whether, notwithstanding violation of the statute, the evidence is admissible," *id.* at 329, the court concluded that, if the application itself failed to demonstrate probable cause,[3] the evidence was inadmissible. *Id.* See *Commonwealth* v. *Reynolds*, 374 Mass. 142, 148-149 (1977); *Commonwealth* v. *Causey*, 356 Mass. 125, 127-128 (1969); *Commonwealth* v. *Brown*, 354 Mass. 337, 345 (1968).[4]

---

thereof be found that it be seized and brought before the court; together with such other and further relief that the court may deem proper.

. . . . . . . . . . . .
Name.
"Then personally appeared the above named . . . . . . and made oath that the foregoing affidavit by him subscribed is true.
"Before me this . . . . . . . . . . .day of . . . . . ,19 . .
Justice or Special Justice,
Clerk or Assistant Clerk
of the . . . . . . Court."

[3] The court said: "We, however, do not decide any constitutional issue because we are satisfied that the Legislature in enacting §§ 2A, 2B, and 2C, had no intent that, after its mandate has been ignored in a manner tending to prejudice the defendant, the effect of such illegality can nevertheless be avoided by evidence presented to the magistrate." 351 Mass. at 329.

[4] The development of exclusionary rules in light of statutory provisions is not uncommon in this Commonwealth. In *Commonwealth* v. *Jones*, 362 Mass. 497 (1972), we dealt with G. L. c. 276, § 33A, which grants to a person in custody in a place of detention the right to use a telephone to seek assistance of family, friends, or counsel. This court suppressed evidence of an identification made at a police station after an intentional refusal to grant the defendant his statutory right, even though the defendant did not show that earlier use of a telephone would have prevented the identification. *Id.* at 503. Cf. *Commonwealth* v. *Cote*, 386 Mass. 354, 361 (1982) (discussion of possible suppression of evidence allegedly obtained in violation of the defendant's right to prompt arraignment pursuant to Mass. R. Crim. P. 7 [a] [1], 378 Mass. 855 [1979] ). Similarly, where an administrative inspec-

This court's determination in the *Monosson* case was to exclude evidence seized pursuant to a search warrant issued under circumstances in which the statutorily prescribed form for establishing probable cause was not met but probable cause may have existed. We think that this same reasoning should also apply when probable cause itself, as required by the State Constitution, is lacking. An absence of probable cause is a particularly significant defect in the warrant process because, if there was no probable cause, a search warrant should not have been issued and (barring any other justification for the search) the search should not have been conducted. Such a violation of a defendant's rights is, therefore, a direct cause of the seizure and the prejudice from the violation is substantial,

---

tion warrant (G. L. c. 94C, § 30) was issued in violation of requirements of the Controlled Substances Act (G. L. c. 94C), this court has suppressed evidence where the Fourth Amendment may not have required suppression. *Commonwealth* v. *Accaputo*, 380 Mass. 435, 439 (1980). See *Commonwealth* v. *Lipomi*, 385 Mass. 370, 372-374 (1982). Recently, we indicated that a complaint against a defendant charged with operating a motor vehicle while under the influence of intoxicating liquor might appropriately be dismissed where police officers failed to inform the defendant of his statutory right (G. L. c. 263, § 5A) to request and receive an immediate physical examination. *Commonwealth* v. *Andrade*, 389 Mass. 874, 878 (1983).

Cases cited in the previous paragraph and *Commonwealth* v. *Monosson*, 351 Mass. 327 (1966), involved statutory violations for which the Legislature provided no explicit remedy. This court construed the statutory mandate as requiring effective relief to a defendant whose rights had been violated — suppression of evidence or, in one case, possible dismissal of the charges.

There are instances in which a statute itself expressly requires suppression of evidence. See G. L. c. 272, §§ 99O and 99P, concerning wiretaps (cf. *Commonwealth* v. *Vitello*, 367 Mass. 224, 278 [1975]; *District Attorney for the Plymouth Dist.* v. *New England Tel. & Tel. Co.*, 379 Mass. 586, 593 [1980]; *Commonwealth* v. *Assad*, 393 Mass. 418, 422 [1984]), and G. L. c. 276, § 1, which requires, unlike the Fourth Amendment, the exclusion of certain evidence seized during a search conducted incident to an arrest (see *Commonwealth* v. *Wilson*, 389 Mass. 115, 118-119 [1983], and *Commonwealth* v. *Toole*, 389 Mass. 159, 161-162 [1983]).

There is also a common law exclusionary rule requiring suppression of evidence seized pursuant to a search warrant where the police, in the circumstances, should have knocked and identified themselves before they entered the premises to be searched. See *Commonwealth* v. *Scalise*, 387 Mass. 413, 417 (1982); *Commonwealth* v. *Cundriff*, 382 Mass. 137, 146 (1980), cert. denied, 451 U.S. 973 (1981).

particularly where the seized evidence is relevant in proving charges against a defendant.

2. *The standard for the determination of probable cause.* The defendant argues that G. L. c. 276, § 2B, mandates a determination of probable cause according to the standard established by the Supreme Court in *Aguilar* v. *Texas*, 378 U.S. 108 (1964), and *Spinelli* v. *United States*, 393 U.S. 410 (1969). Section 2B, as well as §§ 1, 2, 2A, and 2C, were added to G. L. c. 276 in substantially their current form by St. 1964, c. 557, which was signed by the Governor on June 16, 1964, the day after the opinion in the *Aguilar* case was released. It is, therefore, not surprising that, in a series of opinions issued shortly thereafter, this court treated the requirements of § 2B as synonymous with those established in the *Aguilar* case. See *Commonwealth* v. *Dias*, 349 Mass. 583, 584 (1965); *Commonwealth* v. *Rossetti*, 349 Mass. 626, 633 & n.6 (1965); *Commonwealth* v. *Mitchell*, 350 Mass. 459, 462-464 & n.5 (1966); *Commonwealth* v. *Cuddy*, 353 Mass. 305, 308-309 (1967); *Commonwealth* v. *Brown*, 354 Mass. 337, 344 (1968). This court even stated in one opinion that "[t]he purpose of the Legislature [in enacting G. L. c. 276, §§ 1, 2, 2A, 2B, and 2C] was to incorporate as statutory requirements for affidavits those features which the court held in the *Aguilar* case to be constitutional requirements." *Commonwealth* v. *Franklin*, 358 Mass. 416, 421 (1970).

The timing of the bill's enactment forecloses such a view. The Legislature could not have known of the *Aguilar* opinion because it sent to the Governor the bill that became St. 1964, c. 557, five days before the Supreme Court issued its *Aguilar* opinion. 1964 Bulletin of Committee Work 582. Moreover, the language of § 2B does not support the view that it incorporates the two-prong test that came to be expressed in the *Aguilar* and *Spinelli* opinions. See *Commonwealth* v. *Upton*, 390 Mass. 562, 581 (1983) (Lynch, J., dissenting). It would be an unacceptable statutory construction to find incorporated in the meaning of a statute, general in its terms, specific constitutional requirements not articulated until after enactment of the statute.

We thus conclude that § 2B does not establish any standard for the determination of probable cause, although it does prescribe in general terms the form and content of applications for search warrants. Sections 1, 2A, and 2B of G. L. c. 276 do require that warrants be issued only if there is a showing of probable cause, and, as we noted earlier, § 2B requires the suppression of evidence seized pursuant to a warrant not based on probable cause.[5]

We must now consider what standard art. 14 of the Declaration of Rights of the Constitution of the Commonwealth prescribes for determining the existence of probable cause.[6] We have equated the word "cause" in art. 14 with the words "probable cause." *Commonwealth* v. *Dana*, 2 Met. 329, 336 (1841). In each case, the basic question for the magistrate is whether he has a substantial basis for concluding that any of the articles described in the warrant are probably in the place to be searched. See *Commonwealth* v. *Stewart*, 358 Mass. 747, 749 (1971); *Brinegar* v. *United States*, 338 U.S. 160, 175-176 (1949). Strong reason to suspect is not adequate. See *Henry* v. *United States*, 361 U.S. 98, 101 (1959).[7] Concerning search warrants for allegedly stolen property, we have said that the affidavit must "contain enough information for an

---

[5] Consequently, these statutes bar any judicial consideration of admitting evidence seized pursuant to a search warrant issued without a showing of probable cause, even if the officer executing the warrant was proceeding in objectively reasonable reliance on the warrant, as in *United States* v. *Leon*, 468 U.S. 897, 904-905 (1984).

[6] Article 14 provides: "Every subject has a right to be secure from all unreasonable searches, and seizures, of his person, his houses, his papers, and all his possessions. All warrants, therefore, are contrary to this right, if the cause or foundation of them be not previously supported by oath or affirmation; and if the order in the warrant to a civil officer, to make search in suspected places, or to arrest one or more suspected persons, or to seize their property, be not accompanied with a special designation of the persons or objects of search, arrest, or seizure: and no warrant ought to be issued but in cases, and with the formalities prescribed by the laws."

[7] We do not know whether the Supreme Court of the United States intended a lower definition of probable cause when, in *Illinois* v. *Gates*, 462 U.S. 213 (1983), it used words such as "fair probability" (*id.* at 238) and "substantial chance" (*id.* at 244 n.13).

issuing magistrate to determine that the items sought are related to the criminal activity under investigation, and that they reasonably may be expected to be located in the place to be searched." *Commonwealth* v. *Cinelli*, 389 Mass. 197, 213, cert. denied, 464 U.S. 860 (1983). See *Commonwealth* v. *Cefalo*, 381 Mass. 319, 328 (1980).

The Commonwealth argues that art. 14 requires no more than is required by the Fourth Amendment as construed and implemented by the Supreme Court of the United States in *Illinois* v. *Gates*, 462 U.S. 213 (1983), and *Massachusetts* v. *Upton*, 466 U.S. 727 (1984). By this view, the question whether probable cause exists is to be determined according to the "totality of the circumstances." See *Illinois* v. *Gates, supra* at 238. The defendant, on the other hand, urges us to express a stricter standard for the determination of probable cause, specifically arguing that under art. 14 we should require a showing similar to that required by the Supreme Court of the United States before its adoption of the "flexible" standard of the *Gates* case.

This court has understandably had little occasion to determine what art. 14 requires be shown to a magistrate in order to constitute probable cause. As our earlier discussion shows, Massachusetts has not had an exclusionary rule as part of its common law or under art. 14, and, consequently, there has been little incentive for defendants to challenge the existence of probable cause on State common law or constitutional grounds. When the Fourth Amendment became applicable to the States through the Fourteenth Amendment (*Mapp* v. *Ohio*, 367 U.S. 643, 655 [1961]), the battle over the existence of probable cause to issue a warrant came to be fought on Federal constitutional turf. Defendants simply raised the Federal issues to the substantial exclusion of arguments based on the State law.

As a practical matter, therefore, cases involving probable cause questions did not call for consideration of any State constitutional question. Nor did our earlier opinion in this case appear to call for such a consideration. There we erroneously concluded that the Federal constitutional principles expressed in *Illinois* v. *Gates*, 462 U.S. 213 (1983), required the exclusion

of the seized evidence. We simply failed to perceive, unlike the dissenting Justices (see *Commonwealth* v. *Upton*, 390 Mass. 562, 578 [1983] [Lynch, J., dissenting]), that the Supreme Court could permit a test for probable cause as " 'flexible' and 'easily applied,' " *Upton*, 390 Mass. at 567, as the fluid *Gates* standard has turned out to be.[8]

The Constitution of the Commonwealth preceded and is independent of the Constitution of the United States. In fact, portions of the Constitution of the United States are based on provisions in the Constitution of the Commonwealth, and this has been thought to be particularly true of the relationship between the Fourth Amendment and art. 14. See *Harris* v. *United States*, 331 U.S. 145, 158 (1947) (Frankfurter, J., dissenting); *Commonwealth* v. *Cundriff*, 382 Mass. 137, 144 n.11 (1980), cert. denied, 451 U.S. 973 (1981). In particular situations, on similar facts, we have reached different results under the State Constitution from those that were reached by the Supreme Court of the United States under the Federal Constitution. On occasion, the differences can be explained because of different language in the two Constitutions. Compare *Commonwealth* v. *Sees*, 374 Mass. 532, 536-538 (1978), with *Doran* v. *Salem Inn, Inc.*, 422 U.S. 922, 932-933 (1975) (right to restrict free speech in places dispensing alcoholic beverages), and *Batchelder* v. *Allied Stores Int'l, Inc.*, 388 Mass. 83, 88-89 (1983) (right under art. 9 of the Declaration of Rights to seek signatures on private property in connection with ballot access), with *Hudgens* v. *NLRB*, 424 U.S. 507 (1976) (no First Amendment right to picket in a privately owned shopping center). On the other hand, in deciding similar constitutional questions, the two courts have reached contrary results based on differences of opinion concerning the application of similar constitutional principles. Compare *Moe* v. *Secretary of Admin. & Fin.*, 382 Mass. 629, 645-650 (1981), with *Harris* v. *McRae*, 448 U.S. 297, 317-318 (1980) (funding

---

[8] The Supreme Court of Rhode Island also did not recognize the *Gates* case as announcing a sweeping new standard. See *State* v. *Ricci*, 472 A.2d 291, 296 (R.I. 1984).

of medically necessary abortions); *District Attorney for the Suffolk Dist.* v. *Watson*, 381 Mass. 648, 660-671 (1980), with *Furman* v. *Georgia*, 408 U.S. 238 (1972) (constitutionality of the death penalty); *Commonwealth* v. *Soares*, 377 Mass. 461, 486, cert. denied, 444 U.S. 881 (1979), with *Swain* v. *Alabama*, 380 U.S. 202, 222 (1965) (use of peremptory challenges to exclude prospective jurors on the basis of race).

Although we have never afforded more substantive protection to criminal defendants under art. 14 of the Declaration of Rights than prevails under the Constitution of the United States, on several occasions we have recognized the possibility of doing so. See *Commonwealth* v. *Sheppard*, 387 Mass. 488, 508 n.22 (1982), rev'd, 468 U.S. 981 (1984); *Commonwealth* v. *Podgurski*, 386 Mass. 385, 391 n.11 (1982), cert. denied, 459 U.S. 1222 (1983); *Commonwealth* v. *Nine Hundred & Ninety-two Dollars*, 383 Mass. 764, 768 (1981); *District Attorney for the Plymouth Dist.* v. *New England Tel. & Tel. Co.*, 379 Mass. 586, 589 (1980); *id.* at 597 & n.1 (Liacos, J., dissenting); *Commonwealth* v. *Ortiz*, 376 Mass. 349, 358 (1978). As we noted earlier, we have had no appropriate occasion to consider what standard of probable cause is required by art. 14.

We conclude that art. 14 provides more substantive protection to criminal defendants than does the Fourth Amendment in the determination of probable cause. We rejected the "totality of the circumstances" test now espoused by a majority of the United States Supreme Court. That standard is flexible, but is also "unacceptably shapeless and permissive." *Commonwealth* v. *Upton*, 390 Mass. at 574. The Federal test lacks the precision that we believe can and should be articulated in stating a test for determining probable cause. The "totality of the circumstances" test is used in deciding several constitutional questions, but it has been applied where no more definite, universal standard could reasonably be developed.[9]

_____

[9] See, e.g., *Commonwealth* v. *Jackson*, 391 Mass. 749, 756 (1984) (fair trial and pretrial publicity); *Commonwealth* v. *Paszko*, 391 Mass. 164, 170 (1984) (reasonableness of identification procedures); *Commonwealth* v.

In the area of probable cause to issue a search warrant, specific and worthwhile standards can be articulated, as opinions of the Supreme Court prior to *Illinois* v. *Gates*, 462 U.S. 213 (1983), have demonstrated. "Clear lines defining constitutionally permissible conduct are most desirable to guide the police, magistrates, prosecutors, defense counsel, and judges." *Commonwealth* v. *Upton*, 390 Mass. at 573. We thus reject the "totality of the circumstances" test as the appropriate standard for determining that probable cause which must be shown under art. 14.

We conclude instead that the principles developed under *Aguilar* v. *Texas*, 378 U.S. 108 (1964), and *Spinelli* v. *United States*, 393 U.S. 410 (1969), if not applied hypertechnically, provide a more appropriate structure for probable cause inquiries under art. 14.[10] Under the *Aguilar-Spinelli* standard, if an

---

*Maldonado*, 389 Mass. 626, 630 (1983) (voluntariness of a waiver of constitutional rights, admission in evidence of defendant's statements to the police); *Commonwealth* v. *Scalise*, 387 Mass. 413, 422 n.8 (1982) (determination of exigent circumstances); *Commonwealth* v. *Buchanan*, 384 Mass. 103, 108 (1981) (consent to search).

[10] The Supreme Court of Washington recently rejected application of the *Gates* standard under that State's Constitution, characterizing the *Gates* standard as "nebulous." *State* v. *Jackson*, 102 Wash. 2d 432, 435 (1984). That court rejected seriatim the various reasons the Supreme Court advanced in support of the "totality of the circumstances" test and concluded that the *Aguilar-Spinelli* standard was appropriate under the Washington Constitution. *Id.* at 443. The Washington court concluded that the affidavit in the case before it satisfied the *Aguilar-Spinelli* test. *Id.* at 446.

Recognized experts in the field have not been favorably disposed toward the Supreme Court's new approach. See Kamisar, *Gates*, "Probable Cause," "Good Faith," and Beyond, 69 Iowa L. Rev. 551, 569-584 (1984); LaFave, Fourth Amendment Vagaries (Of Improbable Cause, Imperceptible Plain View, Notorious Privacy, and Balancing Askew), 74 J. of Crim. L. & Criminology 1171, 1186-1197 (1983), and 1 W. LaFave, Search & Seizure § 3.3, at 134-141, 143-145 (Supp. 1984). Professor Kamisar notes that under *Illinois* v. *Gates* "the warrant is to be upheld as long as there is a 'substantial basis' for a 'fair probability' that evidence will be found in a particular case. Not much, is it?" Kamisar, *supra* at 570. Professor LaFave in his article cited above (at 1189-1194) challenges the correctness of each proposition on which the *Gates* majority relied in announcing the new standard and expresses the hope "that courts will continue to place considerable reliance upon the elaboration of . . . factors in earlier cases [veracity,

affidavit is based on information from an unknown informant, the magistrate must "be informed of (1) some of the underlying circumstances from which the informant concluded that the contraband was where he claimed it was (the basis of knowledge test), and (2) some of the underlying circumstances from which the affiant concluded that the informant was 'credible' or his information 'reliable' (the veracity test). *Aguilar* v. *Texas, supra* at 114. If the informant's tip does not satisfy each aspect of the *Aguilar* test, other allegations in the affidavit that corroborate the information could support a finding of probable cause. *Spinelli* v. *United States, supra* at 415." *Commonwealth* v. *Upton*, 390 Mass. at 566.

Each prong of the *Aguilar-Spinelli* test — the basis of knowledge and the veracity of the informant — presents an independ-

reliability, and basis of knowledge] decided under the now-discarded *Aguilar* formula." LaFave, *supra* at 1195.

The Supreme Court of Connecticut has recently concluded that the *Aguilar-Spinelli* test was incorporated in the Connecticut wiretap statute and that it did not have to consider the application of the *Gates* standard to the case before it. *State* v. *Ross*, 194 Conn. 447, 463 (1984). The Supreme Court of California has held that the *Aguilar-Spinelli* standard was the appropriate one to test probable cause under the State Constitution (prior to its amendment). See discussion in *People* v. *Kershaw*, 147 Cal. App. 3d 750, 754 n.2 (1983).

Several States, after the Supreme Court's opinion in *Illinois* v. *Gates*, have embraced the *Gates* standard explicitly or implicitly as a matter of State constitutional or common law. See *Thompson* v. *State*, 280 Ark. 265, 271 (1983); *State* v. *Lang*, 105 Idaho 683 (1983) (4-1 decision); *People* v. *Tisler*, 103 Ill. 2d 226 (1984) (5-2 decision); *State* v. *Rose*, 8 Kan. App. 2d 659, 663 (1983), approved in *State* v. *Walter*, 234 Kan. 78, 81-82 (1983); *Beemer* v. *Commonwealth*, 665 S.W.2d 912, 915 (Ky. 1984); *Potts* v. *State*, 300 Md. 567, 575-576 (1984); *State* v. *Arrington*, 311 N.C. 633, 643 (1984); *Bonsness* v. *State*, 672 P.2d 1291, 1293 (Wyo. 1983). None of these opinions pays particular attention to the independent role State courts should play in interpreting State constitutional provisions. Other opinions have done so (*State* v. *Lang, supra* at 685 [Bistline, J., dissenting]; *State* v. *Hunt*, 91 N.J. 338, 345-347 [1982]; *id.* at 351-358 [Pashman, J., concurring]; and *id.* at 359-368 [Handler, J., concurring]), or have urged that the effort be made (*State* v. *Arnold*, 214 Neb. 769, 774-776 [1983] [White, J., concurring]).

Some State courts have left open the question whether they would adopt the *Aguilar-Spinelli* or the *Gates* standard under their State Constitutions. See *People* v. *Stark*, 691 P.2d 334, 338 n.3 (Colo. 1984); *State* v. *Ronngren*, 361 N.W.2d 224, 230 n.1 (N.D. 1985); *Commonwealth* v. *Jones*, 506 Pa. 262, 272 (1984).

ently important consideration. We have said that independent police corroboration can make up for deficiencies in either or both prongs of the *Aguilar-Spinelli* test. *Commonwealth* v. *Upton*, 390 Mass. at 568. We reiterate today, however, that each element of the test must be separately considered and satisfied or supplemented in some way.

The test we adopt has been followed successfully by the police in this Commonwealth for approximately twenty years. It is a test that aids lay people, such as the police and certain magistrates, in a way that the "totality of the circumstances" test never could. We believe it has encouraged and will continue to encourage more careful police work and thus will tend to reduce the number of unreasonable searches conducted in violation of art. 14. We reject the argument that the higher standard will cause police to avoid seeking search warrants. We have no sense, and certainly we have no factual support for the proposition, that in recent years police in this Commonwealth have risked conducting warrantless searches because of the unreasonable strictures of the *Aguilar-Spinelli* test.

We also do not believe that the *Aguilar-Spinelli* test has interfered or will interfere with the deference that a reviewing court should show to the issuing magistrate's determination. "Once a magistrate has determined that he has information before him that he can reasonably say has been obtained in a reliable way by a credible person, he has ample room to use his common sense and to apply a practical, nontechnical conception of probable cause." *Illinois* v. *Gates*, 462 U.S. at 287 (Brennan, J., dissenting). In this Commonwealth, we have always urged reviewing courts to "be slow to jettison" warrants which exhibit such a commonsense approach. See *Commonwealth* v. *Von Utter*, 355 Mass. 597, 600 (1969).

Finally, we note that the number of cases in which evidence has been suppressed because of a failure to follow the requirements of the *Aguilar-Spinelli* test has not been substantial in relation to the number of challenges made to the adequacy of applications for search warrants. See *United States* v. *Leon*, 468 U.S. 897, 950 n.11 (1984) (Brennan, J., dissenting); Davies, A Hard Look at What We Know (and Still Need to

Learn) About the "Costs" of the Exclusionary Rule: The NIJ Study and Other Studies of "Lost" Arrests, 1983 Am. B. Found. Research J. 611, 619. And, of course, there is no way to document the salutary circumstance that numerous unreasonable searches were never made because of the application of the *Aguilar-Spinelli* test. We conclude, therefore, that the *Aguilar-Spinelli* test, as modified by our earlier decision in this case, is the standard for determining probable cause under art. 14.[11]

3. *Probable cause in this case.* Pursuant to the appropriate standard, we must undertake an analysis of the affidavit presented in support of the warrant to search the motor home. The significant portions of that affidavit are set forth in our earlier opinion. *Commonwealth* v. *Upton*, 390 Mass. at 564 n.2. We apply the *Aguilar-Spinelli* standard, with the modification we thought had been made in the *Gates* opinion. *Upton*, 390 Mass. at 568. We also acknowledge that our attitude is not and should not be a grudging or negative one and that we should give great deference to the magistrate's determination of probable cause. *Id.* at 568-569. We grant that the question is a close one.

Probable cause was not shown on the affidavit in this case. In our earlier opinion we concluded that the basis of the informant's knowledge was narrowly established, even though the reason why she believed the stolen property to be in the motor home was not presented. The veracity of the informant, however, was not shown. Anyone who might conclude that the veracity of the informant was demonstrated would have to place substantial credence in the unknown informant's uncorroborated statements as self-verifying. *Id.* at 572-573. To para-

---

[11] We acknowledge that evidence seized in violation of Massachusetts law, but not in violation of Federal law, may nevertheless be admissible in a prosecution in a Federal court (and perhaps in another State). See 1 W. LaFave, Search and Seizure § 1.3, at 52 (1978). That fact cannot justify our adoption of a lesser standard of probable cause to be applied in this Commonwealth. The possibility of Federal prosecutors' using evidence inadmissible in the courts of Massachusetts already exists under common law and other statutory exclusionary rules.

phrase our earlier opinion, "[i]f the affidavit in the case before us were to be upheld, [art. 14 of the Declaration of Rights] would be weakened to the level of permitting the search of any person's premises based on a telephone tip from an anonymous informer who told a story connecting those premises with the fact of a recent police search of a third person's room on premises to which the public had access." *Id.* at 573. The probability of a link between the search of the motel room and the motor home was not shown, as it could have been if other information known to the police had been set forth in the affidavit (particularly the fact that a wallet containing identification of Upton's wife had been found in the motel room). *Id.* at 572 n.8.

4. *Motor vehicle exception.* The Commonwealth argues that, even if the warrant was invalid, the search was justified as a warrantless search under an automobile exception to the requirement of a search warrant.[12] The motor home had wheels and could be moved. It was parked about one foot away from the Upton house and was enclosed by a stockade fence, two sections of which could be opened by swinging them apart. There was evidence that the fence was six feet high and that the defendant told a police officer that he had lived in the motor home for the previous two weeks but did not own it. Two

---

[12] When this case was before us for the first time, we regarded an argument made in a footnote in the Commonwealth's brief as contending that there were exigent circumstances justifying a warrantless search, and we concluded that the question of exigency was not presented to the motion judges. *Upton*, 390 Mass. at 574-575. The matter of a justified automobile search was argued in memoranda presented to both motion judges and was referred to in the footnote in the Commonwealth's original brief filed here. The argument in that footnote, however, did not present the automobile exception as an appellate issue apart from the general exigency argument. The Commonwealth's argument in its original brief did not discuss the application of such an exception to an occupied motor home nor, most significantly, did the Commonwealth point to any evidence that would have warranted a finding that the area where the motor home was parked was not one as to which the defendant had a reasonable expectation of privacy. See *United States* v. *Chadwick*, 433 U.S. 1, 12-13 (1977); *Commonwealth* v. *Simmons*, 383 Mass. 46, 54-55 (1981). We did not regard the automobile exception standing alone as properly raised and argued by the Commonwealth's brief. We do, however, discuss it now.

officers who conducted the search said they did not notice if the vehicle was registered, and one said he did not notice if the motor home was connected to running water.

In the present posture of this case, the issue is whether under the law of the Commonwealth an exception to the warrant requirement applies to the motor home.[13] The applicability to motor homes of the Federal automobile exception has been considered by United States Courts of Appeals with differing results. Compare *United States* v. *Holland*, 740 F.2d 878, 880 (11th Cir. 1984) (exception applies to motor home used only for transportation), with *United States* v. *Wiga*, 662 F.2d 1325, 1329 (9th Cir. 1981) (exception inapplicable even to motor home traveling on city street). The question in one aspect is now before the Supreme Court of the United States on review of a decision of the Supreme Court of California that a motor home parked in a public parking lot was not subject to the automobile exception to the warrant requirement. *People* v. *Carney*, 34 Cal. 3d 597 (1983), cert. granted, 465 U.S. 1098 (1984).

We are aware of no court that has applied the Federal automobile exception to a warrantless search of the interior of a motor home used as a residence and parked on the private property of the occupant's family. In this case, the defendant's expectation of privacy was increased by the fact that the motor home was parked within a foot of the Upton house and was enclosed by a six-foot-high stockade fence. Further, in this case, to the extent that we would require some showing of exigency to justify such a warrantless search, there is no showing of any exigency, as we noted in our previous opinion. *Commonwealth* v. *Upton*, 390 Mass. at 574-575. As a matter of Massachusetts constitutional law, we decline to admit the evidence seized from the defendant's motor home under an

---

[13] Under the Fourth Amendment, it is clear that the warrant was properly issued, and, for the purposes of Federal law, there is no reason to consider whether a Federal automobile exception to the warrant requirement would be applicable if the search had been unreasonable. Our concern is whether in these circumstances a warrantless search was justified as a matter of State law.

exception to the warrant requirement of art. 14. We suspect the result would be the same under the Fourth Amendment but do not rest our decision on that ground.

5. *Conclusion.* In our earlier opinion, we noted that, apart from the evidence seized from the motor home, "there was other evidence to support the defendant's conviction on at least some of the charges against him." *Commonwealth* v. *Upton*, 390 Mass. at 575. The case, is, therefore, remanded to the Superior Court subject to the same orders that we previously entered. *Id.* at 577.

*So ordered.*


LYNCH, J. (dissenting, with whom Nolan, J., joins). For the reasons stated in my earlier dissent, *Commonwealth* v. *Upton*, 390 Mass. 562, 578 (1983), I believe probable cause existed here under the test of *Illinois* v. *Gates*. Furthermore, I find nothing in the Massachusetts Declaration of Rights or G. L. c. 276, § 2B, that mandates a stricter standard for determining whether probable cause exists than is found in the United States Constitution. Because I believe probable cause exists, I would not reach the issue whether G. L. c. 276, § 2B, provides a statutory prohibition against the admission of evidence seized under a warrant issued without probable cause. I therefore respectfully dissent.