JOHN J. KELLY vs. CIVIL SERVICE COMMISSION & another.[1]

Hampden. February 6, 1998. - March 12, 1998.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Constitutional Law,* Use in civil proceeding of illegally obtained evidence. *Civil Service,* Decision of Civil Service Commission, Termination of employment. *Administrative Law,* Evidence.

Evidence obtained as a result of a traffic stop and arrest of an off-duty fire fighter, which was suppressed in an ensuing criminal proceeding, was properly considered in an administrative hearing reviewing the fire fighter's termination from employment on account of that arrest, where no purpose underlying the exclusionary rule would have been served, in the circumstances, by excluding the evidence. [78-79]

CIVIL ACTION commenced in the Chicopee Division of the District Court Department on August 13, 1991.

After transfer to the Superior Court Department, the case was heard by *Bertha D. Josephson,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Rosemary S. Gale,* Assistant Attorney General (*Jonathan A. Abbott,* Assistant Attorney General, with her) for the Civil Service Commission.

*Albert R. Mason* for the City of Chicopee.

*Charles K. Stephenson* for the plaintiff.

GREANEY, J. The plaintiff, John J. Kelly, was terminated from his employment as a fire fighter for the city of Chicopee (city) on June 8, 1990, following his arrest on charges of operating a motor vehicle without a license and possession of a class B substance (crack cocaine). Kelly appealed to the Civil Service Commission (commission), pursuant to G. L. c. 31, § 43. After a hearing before an administrative magistrate of the Division of Administrative Law Appeals, the magistrate concluded that the discharge was merited, and she recommended that the commis-

[1]City of Chicopee.

sion affirm the discharge. The commission accepted this recommendation. Kelly then filed a complaint in the District Court, pursuant to G. L. c. 31, § 44, seeking judicial review of the commission's decision. By order dated November 24, 1992, a single justice of this court ordered this case (among others) transferred to the Superior Court in the county of origin. Judgment was entered in the Superior Court vacating the decision and remanding the matter to the commission because the commission's decision principally relied on evidence and testimony suppressed in proceedings on the criminal charges, and which, the judge concluded, should have been excluded from the administrative hearing. The city and commission appealed, and, in a rescript opinion, the Appeals Court dismissed the city's appeal as interlocutory. 43 Mass. App. Ct. 908 (1997).[2] We granted the defendants' application for further appellate review. We reverse the judgment and direct the entry of a judgment upholding Kelly's discharge.

1. The pertinent facts found by the administrative magistrate, and adopted by the commission, are as follows. At approximately 11 P.M. on May 16, 1990, Holyoke police officers Joey Jones and Aurielio Garcia saw Kelly, who was not known to them, slouched down in the driver's seat of a blue pickup truck parked outside of a building on Maple Street in Holyoke. They then saw Manuel Ortega, who had been standing outside of the building, approach the passenger side of the truck. One of Kelly's hands then reached up to meet one of Ortega's hands. When Kelly drove away, the officers followed for a short distance, then stopped him. Kelly put his hand to his mouth. At the officers' request, Kelly provided them with his license and registration. When the officers asked Kelly whether he knew the individual who had approached his vehicle on Maple Street, he

---

[2] The Appeals Court did not pass on the appropriateness of the Civil Service Commission's (commission's) appeal. Although a court-ordered remand typically is not subject to appeal, see, e.g., *Metropolitan Dist. Comm'n* v. *Department of Pub. Utils.*, 352 Mass. 18, 30 (1967); *Marlborough Hosp.* v. *Commissioner of Pub. Welfare*, 346 Mass. 737, 738 (1964), an exception to this general rule exists where an administrative agency appeals a remand order that is final as to the agency. See *Cliff House Nursing Home, Inc.* v. *Rate Setting Comm'n*, 378 Mass. 189, 191 (1979). See also *J.C. Hillary's* v. *Massachusetts Comm'n Against Discrimination*, 27 Mass. App. Ct. 204, 206 n.4 (1989); *Politano* v. *Selectmen of Nahant*, 12 Mass. App. Ct. 738, 740 (1981); *Blue Moon Saloon, Inc.* v. *Alcoholic Beverages Control Comm'n*, 11 Mass. App. Ct. 890, 891 (1980).

replied that he did and that the individual's name was Manuel Ortega. Kelly smelled strongly of alcohol and had bloodshot eyes. He told the officers that he had been at a bar in Holyoke. At no time during the stop did he tell the officers that he was lost.[3]

On discovering that Kelly's driver's license had expired, the officers arrested him for operating a motor vehicle without a license. He was asked to open his mouth, and he did so, but did not lift his tongue. The officers then transported Kelly to the police station in their cruiser.

After Kelly was taken to the booking desk, Officer Jones checked the back seat of the cruiser as required by Holyoke police department policy. He discovered a one-half inch to one inch long vial, later determined to contain crack cocaine, tucked in behind the back seat. Officers Jones and Garcia had checked the cruiser, including behind the back seat, at the beginning of their shift at 4 P.M., and no one else had been in the back seat after that time except Kelly. Kelly was then charged with possession of a class B substance.

During the booking process, Kelly acted in a belligerent manner. Kelly repeatedly said: "This is all a joke. You're a joke." He said once: "Nunes [chief of the Chicopee fire department] got me off the first time. He'll get me off again." On May 18, 1990, Kelly telephoned Chief Nunes and professed his innocence. He told Nunes that he had had a few beers and on the way home he stopped to ask directions of "a guy he knew from the railroad." On December 18, 1990 (prior to commencement of the administrative hearing), all the indictments arising from Kelly's May 16, 1990, arrest were dismissed on allowance of his motion to suppress.

The magistrate also found that Kelly, who was originally hired in 1983, had been suspended in 1986 after being indicted, and then pleading guilty to so much of the indictment as alleged that he knowingly allowed bets to be registered on his premises. Based on the resolution of the criminal matter and psychological and physical evaluations that concluded Kelly was competent to perform his duties (but expressed reservations about his judg-

---

[3]The administrative magistrate was very careful regarding her findings relative to the criminal matter. In particular, she excluded from her findings the arresting officers' testimony that Kelly's automobile was parked in an area of Holyoke known for drug dealing, and that Manuel Ortega was known to the officers as a drug dealer.

ment and tendency to underestimate or rationalize unacceptable qualities and behaviors), Kelly was reinstated in June, 1989.

The magistrate concluded that, by a preponderance of the evidence, Kelly was in possession of a vial containing cocaine, was driving without a valid driver's license and while intoxicated, and, in his belligerence toward the police, engaged in conduct unbecoming a fire fighter. Based on the totality of the evidence, along with Kelly's prior gambling conviction, the magistrate determined that the discharge was merited and recommended that the commission affirm Kelly's discharge.

2. The parties argue over whether certain issues were properly raised or preserved in the administrative proceedings and in the Superior Court. We need not deal with the arguments. We assume that the stop and arrest of Kelly by the Holyoke police was unlawful, and that the evidence obtained by the police was properly suppressed in the criminal proceeding. The dispositive issue is whether, even if the evidence was properly suppressed in the criminal proceeding, this case is distinguishable from *Selectmen of Framingham* v. *Municipal Court of the City of Boston*, 373 Mass. 783 (1977), and the evidence was admissible for purposes of establishing "just cause" for Kelly's discharge. We conclude that the commission properly considered the evidence suppressed in the criminal proceeding in making its decision to terminate Kelly.

In *Selectmen of Framingham, supra,* we held that the warrantless search of the home of a Framingham police officer, without his consent, by the Framingham police was illegal, and the resulting evidence was inadmissible for purposes of determining whether to discharge the officer. *Id.* at 784-785. In reaching our decision, we discussed the various purposes underlying the exclusionary rule, including the deterrence of unreasonable searches and seizures, assurance that the government will not profit from its own lawless behavior, and preservation of judicial integrity. *Id.* at 786-787. See 1 W. LaFave, Search and Seizure § 1.1(f) (3d ed. 1996). After determining that " 'judicial integrity' [was] at stake in the sense that the government [was] seeking to take advantage of its own lawbreaking to punish the victim of that illegality," *Selectmen of Framingham, supra* at 787, we concluded that, in the circumstances, "the protection of the privacy of the individual and the necessity for preserving confidence in the processes of government, rather than encouraging contempt for them, require that the evidence be held inadmissible." *Id.*

Relying on *Selectmen of Framingham*, Kelly argues that concern for judicial integrity precludes the use of illegally obtained evidence in his discharge proceedings. We reject the argument.

In *Selectmen of Framingham*, the town both employed the police officers who conducted the improper search of an employee's home and wanted to use the fruits of that search in the civil proceeding to justify its discharge of the employee. In this case, different municipal governments were involved (Holyoke employed the police officers and Chicopee employed Kelly), so there is no attempt by the city to profit from its own wrongdoing. To accept Kelly's argument would prevent the city from using probative evidence through no fault of its own. More importantly, the interests of the commission in having all reliable evidence, and the city (and the public generally) in ensuring that its public safety officers are fit for duty, are substantial. On the other hand, the additional deterrent effect, if existent, is negligible. No reasonable argument can be made that the arresting officers stopped Kelly in the hope of acquiring evidence so that he could be discharged. The officers neither knew him personally, nor did they know that he was a fire fighter. The outcome of this employment case, even if it were to come to the attention of the police, is unlikely to have any more effect on future police conduct than the dismissal of the criminal case alone.

We conclude that no purpose underlying the exclusionary rule would be served by excluding evidence obtained as a result of the stop from the commission's proceedings. Accordingly, we hold that, even if the evidence obtained as a result of the stop was inadmissible in the criminal proceeding, that evidence was properly considered in the decision to discharge Kelly.

3. The judgment is reversed, and a new judgment is to enter upholding the commission's decision to terminate Kelly.

*So ordered.*