The defendant was charged with carrying a firearm without a license, unlawful possession of ammunition, and possession of a class D substance (marijuana) with intent to distribute. The defendant moved to suppress "anything recovered as a result of" searches conducted of the defendant's residence and person pursuant to two search warrants. A District Court judge allowed the motion after concluding that the application for the warrants failed to establish probable cause. The Commonwealth obtained approval from a single justice of the Supreme Judicial Court to pursue an interlocutory appeal. Because we agree with the Commonwealth that the search warrants were supported by probable cause, we reverse.
Our review is confined to the "four corners" of the affidavit that a Randolph police officer submitted in support of the application for the search warrants. Commonwealth v. Martinez, 476 Mass. 410, 415 (2017). That ten-page, single-spaced affidavit detailed why the police had concluded that the defendant was operating a marijuana distribution business out of his home in Randolph (home).
In August of 2015, the police received neighborhood complaints about vehicle traffic to the home. Specifically, "[t]he complaints indicated that on a daily basis cars come and go frequently, and stay only a few minutes, consistent with what they believed were narcotics transactions." The police followed up with one particular area resident who was not identified in the affidavit, but was known to the police. Over the course of the investigation, she provided detail as to what she observed, including her seeing the frequent visitors to the home provide the defendant money and him "hand over a small baggie on several occasions which appeared to be green in color."
The police conducted two "trash pulls" at the home and discovered items indicative of a drug distribution operation.[2] On each such occasion, a specially trained police dog gave a "strong alert" for a "narcotics odor" from items found in the trash pulls. Finally, the police themselves conducted surveillance of the home during which they directly observed two brief hand-to-hand exchanges during which visitors to the home gave the defendant money and received a "small item" in exchange.
The judge did not issue a written memorandum and order explaining his ruling, but he did make some oral comments at a hearing.[3] Citing the Aguilar-Spinelli test,[4] the judge stated that he had "not been moved about sufficient facts to conclude that [the defendant is] doing marijuana out of [the] house." He added, "You know, usually we see affidavits, you know, they talk about the [confidential informant] having been in the house, having dealt directly, bought, that sort of stuff."
Under the familiar Aguilar-Spinelli test, an affidavit relying on hearsay from an unidentified informant must contain: "(1) some of the underlying circumstances from which the informant concluded that the contraband was where [s]he claimed it was (the basis of knowledge test), and (2) some of the underlying circumstances from which the affiant concluded the informant was 'credible' or [her] information 'reliable' (the veracity test)." Commonwealth v. Upton, 394 Mass. 363, 375 (1985). The basis of knowledge test is easily satisfied here: the affidavit reveals that the informant was a nearby resident who was relying on specific, direct observations of what she saw. See Commonwealth v. Alvarez, 422 Mass. 198, 205 (1996).
With regard to the reliability test, this is not a case in which the affidavit recited instances of the informant supplying reliable information to the police in the past.[5] However, the extensive detail that she provided is one factor that supports the reliability of her information. See Commonwealth v. Parapar, 404 Mass. 319, 323 (1989). In addition, while the informant was not identified in the affidavit, her identity was known to police, and the penalties that apply to giving false information to police provide some boost to the credibility of the information she provided. See Commonwealth v. Costa, 448 Mass. 510, 516 & n.10 (2007) (identified informants are more reliable because they potentially are subject to prosecution for making a "false report of a crime").
Finally, but most significantly, direct police observations corroborated much of the information that the informant provided and supplied an additional basis for probable cause. See Commonwealth v. Upton, supra at 376 (independent police corroboration may be used to buttress information from an informant that fails either or both prongs of Aguilar-Spinelli test). For example, the police were able to observe, just as the informant reported, that there were frequent visitors to the house who engaged in brief, hand-to-hand exchanges, in which the visitors provided money to the defendant and received an item in return. Based on all of the information available to the police, including the background knowledge and expertise of the officer who swore out the affidavit, the police had probable cause to believe that the defendant was running a marijuana distribution operation out of the home.[6] The judge therefore erred in allowing the motion to suppress.
Order allowing motion to suppress reversed.

The police discovered plastic baggies with torn or knotted corners, which were consistent with a common method of packaging drugs. In addition, in the first trash pull they found a box for an electronic scale, and in the second, they found the cover for such a scale.

Although the Commonwealth does not press the point, from all that appears in the transcript, the hearing was ex parte. Defense counsel specifically informed the judge at the beginning of the hearing that the assigned assistant district attorney could not be there and yet the hearing went forward anyway.

See Aguilar v. Texas, 378 U.S. 108 (1964) ; Spinelli v. United States, 393 U.S. 410 (1969).

There is nothing in the affidavit to suggest that the informant had past interactions with the police. If she was merely a concerned citizen coming forward because of what she observed at a neighboring house, then she obviously might not have had any track record with the police.

This is not a case in which the police failed to establish a sufficient nexus between a defendant's drug operations and the home for which a search warrant was sought. See Commonwealth v. Escalera, 462 Mass. 636, 643 (2012).