**STUDIO ART THEATRE OF EVANS-VILLE, INC., Defendant–Appellant,**

**v.**

**STATE of Indiana, Plaintiff–Appellee.**

**No. 82A01–8805–CR–152.**

Court of Appeals of Indiana,
First District.

Nov. 22, 1988.

Rehearing Denied Jan. 31, 1989.

Lee J. Klein, Durand, Lockyear & Kornblum, Evansville, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Joseph N. Stevenson, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

NEAL, Judge.

### STATEMENT OF THE CASE

Defendant-appellant, Studio Art Theatre of Evansville, Inc. (Studio Art), appeals its conviction under the Indiana Racketeer Influenced & Corrupt Organizations Act (RICO), IND.CODE 35–45–6–2(a)(3).

We affirm.

### STATEMENT OF THE FACTS

Studio Art was charged by amended indictment with 19 specifications of violation of the Indiana RICO statute, IND.CODE 35–45–6–2, all of which, except specifications 12, through 15, were dismissed. Those remaining specifications charge Studio Art as follows:

(12) did on December 17, 1985 knowingly display for sale to any person matter that is harmful to minors, to-wit: the movie "Teenage Runaway" within five hundred (500) feet of the nearest property line of St. Boniface Catholic Church, St. Boniface Catholic School and Simpson's United Methodist Church, all in violation of I.C. 35–49–3–3(3).

(13) did on December 19, 1985 knowingly display for sale to any person matter that is harmful to minors, to-wit: "Seduction of Lana Shore" within five hundred (500) feet of the nearest property line of St. Boniface Catholic Church, St. Boniface Catholic School and Simpson's United Methodist Church, all in violation of I.C. 35–49–3–3(3).

(14) did on February 6, 1986 knowingly sell to Gerald Wingerter matter that is harmful to minors, to-wit: the movie "Boys in a Bath", within five hundred (500) feet of the nearest properly line of St. Boniface Catholic Church, St. Boniface Catholic School and Simpson's United Methodist Church, 35–49–3–3(3).

(15) did on February 6, 1986 knowingly sell to Gerald Wingerter matter that is harmful to minors, to-wit: the movie "Guishe's Slave", within five hundred (500) feet of the nearest property line of St. Boniface Catholic Church, St. Boniface Catholic School and Simpson's United Methodist Church, all in violation of I.C. 35–49–3–3(3).

*Record* at 138–39.

IND.CODE 35–45–6–2(a) states:

A person:

(1) Who has knowingly or intentionally received any proceeds directly or indirectly derived from a pattern of racketeering activity, and who uses or invests those proceeds or the proceeds derived from them to acquire an interest in real property or to establish or to operate an enterprise;

(2) Who through a pattern of racketeering activity, knowingly or intentionally acquires or maintains, either directly or indirectly, an interest in or control of real property or an enterprise; or

(3) Who is employed by or associated with an enterprise, and who knowingly or intentionally conducts or otherwise participates in the activities of that enterprise through a pattern of racketeering activity; commits corrupt business influence, a Class C felony.

The RICO charge was predicated upon IND.CODE 35–49–3–3 which reads as follows:

A person who knowingly or intentionally:

(1) Disseminates matter to minors that is harmful to minors;

(2) Displays matter that is harmful to minors in an area to which minors have visual, auditory, or physical access, unless each minor is accompanied by his parent or guardian;

(3) Sells or displays for sale to any person matter that is harmful to minors within five hundred feet [500'] of the nearest property line of a school or church;

(4) Engages in or conducts a performance before minors that is harmful to minors;

(5) Engages in or conducts a performance that is harmful to minors in an area to which minors have visual, auditory, or physical access, unless each minor is accompanied by his parent or guardian;

(6) Misrepresents his age for the purpose of obtaining admission to an area from which minors are restricted because of the display of matter or a performance that is harmful to minors; or

(7) Misrepresents that he is a parent or guardian of a minor for the purpose of obtaining admission of the minor to an area where minors are being restricted because of display of matter or performance that is harmful to minors;

commits a class A misdemeanor.

Upon stipulated facts the trial court found that Studio Art knowingly had in its possession and displayed for sale the video cassette films set forth in specifications 12 through 15, and that the films depicted sexual conduct, nudity, and sexual excitement. The trial court found that the films were offered for sale within 500 feet of the churches and schools charged in the indict-

ment in violation of IND.CODE 35–49–3–3(3), supporting the RICO charge.

## ISSUES

On appeal the appellant claims numerous errors, which we restate as follows:

I. Whether the RICO statute is unconstitutional.

II. Whether the trial court lacked jurisdiction because the amended indictment was not resubmitted to the grand jury.

III. Whether the trial court erred in interpreting IND.CODE 35–49–3–3(3) regarding the method of measuring the 500 foot distance set forth therein.

## DISCUSSION AND DECISION

ISSUE I: *Constitutionality*

Studio Art argues on a broad front that IND.CODE 35–45–6–2 and IND.CODE 35–49–3–3 are unconstitutional. Studio Art claims that these statutes violate its rights under the first, fifth, and fourteenth amendments of the United States Constitution and art. I § 9 of the Indiana Constitution. It claims that the statutes are overbroad, vague, violate equal protection, and amount to the taking of its property without just compensation. It concludes with the claim that the statutes have an impermissible chilling effect on its first amendment rights.

The cases of 4447 Corp. v. Goldsmith (1987), Ind., 504 N.E.2d 559; and State v. Sappenfield (1987), Ind.App., 505 N.E.2d 504, *trans. denied,* concerned the relation of the State's obscenity statute, IND. CODE 35–49–1–1 to –3–4, to the RICO statute. Those cases held that the RICO statute is not unconstitutional as applied to the obscenity statute. A petition for certiorari on 4447 Corp. is currently pending in the Supreme Court of the United States. Discussion in those cases specifically addressed the first and fourteenth amendments and the argument made that the statutes were unconstitutionally vague. The same arguments are presented here, and in addition thereto, other remote constitutional arguments are presented which hinge on first and fourteenth amendment rights.

Because these matters have been presented to and ruled upon by our supreme court, we do not deem it necessary to discuss them further. If the reader so desires, he is directed to those cases for further edification.

ISSUE II: *Amended Indictment*

■ The original indictment, signed by the grand jury foreman and the prosecuting attorney reads in part:

The Grand Jurors for the County of Vanderburgh and State of Indiana, upon their Oaths, present and charge that:

World Wide Business Management and Consultants, Inc. d/b/a World Wide Business Management, Inc.

Studio Art Theatre of Evansville, Inc.

A.M.W. Investments, Inc. and William Montrose

BETWEEN 11–11–85 AND 2–11–86 BEING ASSOCIATED WITH AN ENTERPRISE; TO-WIT: THE STUDIO ART THEATRE OF EVANSVILLE INC. DID PARTICIPATE IN THE ACTIVITIES OF THAT ENTERPRISE THROUGH A PATTERN OF RACKETEERING ACTIVITY, TO-WIT:

(1) did knowingly exhibit to Larry Cannon on November 11, 1985 an obscene performance, to-wit: an act of female masturbation, all in violation of I.C. 35–49–3–2.

*Record* at 33. There followed 28 more specifications utilizing a format similar to that set forth in specification number one. The trial court permitted the State to amend the indictment to insert the word "knowingly" in the indictment as follows:

The Grand Jurors for the County of Vanderburgh and State of Indiana, upon their Oaths, present and charge that:

World Wide Business Management and Consultants, Inc. d/b/a World Wide Business Management, Inc.

Studio Art Theatre of Evansville, Inc.

A.M.W. Investments, Inc. and William Montrose

BETWEEN 11–11–85 AND 2–11–86 BE- ING ASSOCIATED WITH AN ENTER- PRISE; TO–WIT: THE STUDIO ART THEATRE OF EVANSVILLE, INC. DID *KNOWINGLY* PARTICIPATE IN THE ACTIVITIES OF THAT ENTER- PRISE THROUGH A PATTERN OF RACKETEERING ACTIVITY, TO–WIT: (1) did knowingly exhibit to Larry Can- non on November 11, 1985 an obscene performance, to-wit: an act of female masturbation, all in violation of I.C. 35– 49–3–2. (Our emphasis.)

*Record* at 137.

The amended indictment, which included only 19 specifications, was not resubmitted to the grand jury but was signed only by the prosecuting attorney. Before final dis- position, the amended indictment was dis- missed as to all defendants except Studio Art, and eventually, all specifications ex- cept 12 through 15 were dismissed as to it. Studio Art moved to dismiss the amended indictment on the grounds that the grand jury had been discharged and had not acted upon it. Denial of that motion is assigned as error.

IND.CODE 35–34–1–5 governing amend- ments reads as follows:

(a) An indictment or information which charges the commission of an offense may not be dismissed but may be amend- ed on motion by the prosecuting attorney at any time because of any immaterial defect, including:

(1) Any miswriting, misspelling, or gram- matical error;

(2) Any misjoinder of parties defendant or offenses charged;

(3) The presence of any unnecessary re- pugnant allegation;

(4) The failure to negate any exception, excuse, or provision contained in the statute defining the offense;

(5) The use of alternative or disjunctive allegations as to the acts, means, in- tents, or results charged;

(6) Any mistake in the name of the court or county in the title of the action, or the statutory provision alleged to have been violated;

(7) The failure to state the time or place at which the offense was committed where the time or place is not of the essence of the offense;

(8) The failure to state an amount of value or price of any matter where that value or price is not of the es- sence of the offense; or

(9) Any other defect which does not prej- udice the substantial rights of the defendant.

(b) The indictment or information may be amended in matters of substance or form, and the names of material witness- es may be added, by the prosecuting attorney, upon giving written notice to the defendant, at any time up to:

(1) Thirty [30] days if the defendant is charged with a felony; or

(2) Fifteen [15] days if the defendant is charged only with one or more misde- meanors;

before the omnibus date. When the in- formation or indictment is amended, it shall be signed by the prosecuting attor- ney.

(c) Upon motion of the prosecuting attor- ney, the court may, at any time before, during, or after the trial, permit an amendment to the indictment or informa- tion in respect to any defect, imperfec- tion, or omission in form which does not prejudice the substantial rights of the defendant.

(d) Before amendment of any indictment or information other than amendment as provided in subsection (b) of this section, the court shall give all parties adequate notice of the intended amendment and an opportunity to be heard. Upon permit- ting such amendment, the court shall, upon motion by the defendant, order any continuance of the proceedings which may be necessary to accord the defend- ant adequate opportunity to prepare his defense.

■ As seen, the State must establish that Studio Art knowingly engaged in the conduct proscribed under the RICO statute. While the original indictment omitted the word knowingly from the capitalized por-

tion of the indictment, each specification used the word, indicating the element required by the statute. Thus, any defect is merely a choice of organization selected by the draftsman. It is one of form, not substance. If a defense under the original indictment would be equally applicable to the indictment in its amended form, no substantial prejudice has occurred. *Graves v. State* (1986), Ind., 496 N.E.2d 383. *See also Pennington v. State* (1988), Ind., 523 N.E.2d 414.

Under IND.CODE 35–34–1–5(a) an indictment may be amended on motion by the prosecuting attorney at any time because of any immaterial defect for:

> (5) the use of alternative or disjunctive allegations as to the acts, means, *intents*, or results charged.

> \* \* \* \* \* \*

> (9) any other defect which does not prejudice the substantial rights of the defendant. [Our emphasis.]

That section does not state a requirement that the amended indictment be resubmitted to the grand jury. In fact, under paragraph (b) it is stated that when the indictment is amended it shall be signed by the prosecuting attorney. Further, under paragraph (b) the indictment may be amended as to substance, and even an amendment of that nature does not require resubmission to the grand jury. Clearly then, under paragraph (a) which addresses immaterial defects and permits amendments to be made at any time, even during tiral, the legislature has not evidenced an intent that it desires that this case be resubmitted to the grand jury. Such action would be patently impractical. Accordingly, in *McCloud v. State* (1983), Ind.App., 452 N.E.2d 1053, an unsigned amended information filed during a trial was held to be valid.

Studio Art relies primarily on *Walker v. State* (1968), 251 Ind. 432, 241 N.E.2d 792. In that case, the defendant was charged with murder, which could be brought only by a grand jury indictment. The trial court sustained a motion to quash the original indictment. At that time, Burns Indiana Statutes 9–113, then in effect, required in such instance that the case be resubmitted to the grand jury for further action. It was not, and our supreme court held that such failure to follow the statute was fatal, preventing the trial court from acquiring jurisdiction. *Walker* is not authority here for the charge is not murder, and the controlling statute does not require that the indictment be resubmitted to the grand jury.

ISSUE III: *Method of Measuring Distance*

■ Finally, Studio Art argues the trial court erred in construing IND.CODE 35–49–3–3(3) regarding the method of measuring the distance between a place selling matter harmful to minors and a "school or church." It seems to argue that the proper method to determine the distance would be to measure the walking distance along the streets between each location. In *Taylor Drug Stores, Inc. v. Indiana Alcoholic Beverage Commission* (1986), Ind.App., 497 N.E.2d 932, where the statutory proscription was directed at the sale of liquor within 200 feet of a church, we held that straight-line measurement was the appropriate method of determining the distance between the two points. The policy in the alcoholic beverage statute and the policy here is identical. We hold that *Taylor* controls. The trial court correctly applied the statute.

For the above reasons, this cause is affirmed.

JUDGMENT AFFIRMED.

RATLIFF, C.J., and CONOVER, P.J., concur.