## COMMONWEALTH *vs.* ROBERT F. SPANO.

Plymouth. October 8, 1992. - January 15, 1993.

Present: LIACOS, C.J., ABRAMS, NOLAN, LYNCH, & GREANEY, JJ.

*Controlled Substances. "School Zone" Statute. Search and Seizure,* Affidavit, Probable cause. *Probable Cause. Constitutional Law,* Search and seizure, Probable cause.

For purposes of the "school zone" statute, G. L. c. 94C, § 32J, which mandates a prison term for persons convicted of drug offenses within 1,000 feet of school premises, the one thousand foot distance should be measured in a straight line from the boundary line of school premises to the location where the illegal drug activity occurred. [180-182]

A police officer's affidavit in support of the issuance of a search warrant, which was based in part on information received from two confidential informants, was sufficiently detailed and contained sufficient corroboration to satisfy tests of the informants' basis of knowledge and veracity as mandated by art. 14 of the Massachusetts Declaration of Rights, and the affidavit provided a substantial basis for a magistrate to conclude that the articles and activity described therein were probably present or occurring at the place to be searched. [182-186]

INDICTMENTS found and returned in the Superior Court Department on February 28, 1990.

A pretrial motion to suppress evidence was considered by *Cortland A. Mathers,* J., and the cases were heard by *John M. Xifaras,* J.

The Supreme Judicial Court granted a request for direct appellate review.

*Nona E. Walker,* Committee for Public Counsel Services, for the defendant.

*Paul C. Dawley,* Assistant District Attorney, for the Commonwealth.

LYNCH, J. The defendant, Robert F. Spano, was convicted after a jury-waived trial of trafficking in cocaine, G. L. c.

94C, § 32E (*b*) (1990 ed.), possession of cocaine with intent to distribute while within 1,000 feet of a school, G. L. c. 94C, § 32J (1990 ed.), and possession of cocaine with intent to distribute, G. L. c. 94C, § 32A (*c*) (1990 ed.). ·The defendant appeals from these convictions, arguing that the judge erred in denying his motion for a required finding of not guilty, based on a claim that G. L. c. 94C, § 32J, which mandates a prison term for drug offenses committed within 1,000 feet of school premises, violates his constitutional rights under both the United States Constitution and the Declaration of Rights of the Massachusetts Constitution. Specifically, he maintains that the statute is unconstitutionally vague because it does not provide an ascertainable standard for measuring the distance from the school to the site of the alleged offense, violates his due process rights because it does not require an intent to possess and to sell drugs to and around schoolchildren inside the zone, and allows consecutive and duplicative sentences to be imposed. The defendant further asserts that the judge erred in denying his motion to suppress evidence seized and statements made during and subsequent to the execution of a search warrant, arguing that the search warrant was not supported by probable cause. We granted his application for direct appellate review. We find no error and affirm the convictions.

After a bench trial, the judge found the following facts. On October 3, 1989, at approximately 1 P.M., local, State, and Federal law enforcement officials executed a no-knock search warrant at 25 Chandler Drive in Marshfield, where the defendant resided. The search yielded drug paraphernalia, 43.47 grams of eighty-nine per cent pure cocaine, $960 in cash rolled and stuffed into a can, a small plastic bag containing pills, and a bottle containing Inositol powder, a dilutant.

We have recently decided three cases which involved challenges to G. L. c. 94C, § 32J. *Commonwealth* v. *Roucoulet*, 413 Mass. 647 (1992). *Commonwealth* v. *Taylor*, 413 Mass. 243 (1992). *Commonwealth* v. *Alvarez*, 413 Mass. 224 (1992). These decisions effectively dispose of all the defend-

ant's contentions, except those based on the method of measuring the drug-free zone established by the statute and the lack of probable cause for the issuance of the search warrant. We turn directly to those arguments.

1. *Measurement.* At trial, the prosecution introduced evidence demonstrating that the defendant's house is located within 1,000 feet of the Daniel Webster Elementary School. Police officers testified that, utilizing a roller tape measurement, they measured the distance. They measured from the school to a point on the defendant's property line, a distance of 470 feet, with an additional thirty to forty feet to his residence. Robert Berche, an investigator for the Committee for Public Counsel Services, testified that the most direct automobile route on the public roads from the school driveway to the defendant's house travels a distance of 4,224 feet or 0.8 miles. Berche also conducted his own straight-line measurement and found the distance to be 512 feet. When questioned by the judge, he agreed that by line of sight the distance is under 1,000 feet.

The defendant argues that G. L. c. 94C, § 32J, is unconstitutionally vague because the statute does not specify ascertainable standards for measuring the requisite distance of 1,000 feet. The defendant suggests, therefore, that the statute fails to put a person of ordinary intelligence on notice as to how to conform his conduct to the statute.

The void for vagueness doctrine requires that criminal statutes be defined in terms that are sufficiently clear to permit a person of average intelligence to comprehend what conduct is prohibited. *Commonwealth* v. *Taylor, supra* at 248, quoting *Commonwealth* v. *Gallant*, 373 Mass. 577, 580 (1977). Due process requires not only fair notice of proscribed conduct, but also that penal statutes be administered in a manner that prevents arbitrary and discriminatory enforcement. See *Commonwealth* v. *Freiberg*, 405 Mass. 282, 289 (1989); *Commonwealth* v. *Williams*, 395 Mass. 302, 304 (1985). The use of general terms in a statute will not make it constitutionally inadequate. *Opinions of the Justices*, 378 Mass. 822, 827 (1979).

The statute in question prohibits possession of illegal drugs with the intent to distribute in, on, or within 1,000 feet of school premises regardless of whether the defendant has actual knowledge of school boundaries. G. L. c. 94C, § 32J. *Commonwealth* v. *Alvarez, supra* at 225-226 & n.1. The elements of the statute are stated in terms that will not delude the public as to its meaning or application, thereby ensuring even enforcement by the police. *Commonwealth* v. *Taylor, supra* at 248-249.

Absent express provisions in the statute specifying the method of determining the extent of the school safety zone, there is no reason why the measurement should not be in a straight line from the school's boundary line to the site of the illegal drug activity. See *Cleary* v. *Cardullo's, Inc.*, 347 Mass 337, 344 (1964) (courts have duty of statutory interpretation in deciding what method to utilize in determining 500-foot distance between church or school and site of premises licensed to sell intoxicating beverages); Annot., 4 A.L.R.3d 1250, 1252 (1965) (discussing measurement between protected institution and premises licensed for the sale of intoxicating beverages). Accord *United States* v. *Campbell*, 935 F.2d 39, 45 (4th Cir. 1991) (testimony of land-survey analyst of police officer's utilizing aerial photograph that placed defendant's activity within 1,000 feet of a school sufficient to find violation of school-zone statute); *United States* v. *Ofarril*, 779 F.2d 791, 792 (2d Cir. 1985), cert. denied, 475 U.S. 1029 (1986) (suggestion that distance should be calculated by pedestrian route between site of drug activity and school violates plain meaning of statute); *State* v. *Burch*, 545 So. 2d 279, 281 (Fla. Dist. Ct. App. 1989) (school-zone statute prohibiting drug activity within 1,000 feet of school; distance should be measured in straight line to school boundary); *Studio Art Theatre of Evansville, Inc.* v. *State*, 530 N.E.2d 750, 754 (Ind. Ct. App. 1988) (straight-line measurement used to determine whether sexually explicit materials are being sold within 500 feet of church or school); *Taylor Drug Stores, Inc.* v. *Indiana Alcoholic Beverage Comm'n*, 497 N.E.2d 932, 936 (Ind. Ct. App. 1986) (absent

express provisions, shortest straight line connecting church and proposed premises, regardless of intervening obstacles, should be used to determine proscribed 200-foot distance); *Calvary Baptist Church* v. *Coonrad*, 163 Neb. 25, 32 (1956) (statute's requisite safety zone determined by straight-line measurement from nearest walls of the two buildings). Four of the five methods used to measure the distance introduced at trial indicated that the school was less than 500 feet away from the defendant's house. There was no error in the judge's finding that the distance between the defendant's house and the elementary school was less than the proscribed distance of 1,000 feet.

2. *Execution of the search warrant.* The defendant claims that the judge erred in denying his motion to suppress evidence under the search warrant, claiming that the affidavit supporting the warrant was not based on probable cause. The defendant alleges that the information in the affidavit was stale, insufficiently detailed, and inadequately corroborated to support a finding of probable cause.

The affidavit by Lieutenant A.L. Knight on which the warrant was based set forth the following facts. During the early part of April, 1989, he received information from a confidential informant, CRI-50, reporting that the defendant was selling cocaine and marihuana at 25 Chandler Drive. CRI-50 told the lieutenant that the defendant was a supplier for smaller dealers in the Marshfield area, and that the defendant had sold drugs in CRI-50's presence to persons at 25 Chandler Drive on more than twenty-five occasions over a three-month period. CRI-50 has used cocaine and marihuana in the past and is familiar with the manner in which it is used, packaged, and sold.

During the early spring of 1989, Lieutenant Knight received information from another informant, CRI-91, who informed him that the defendant was selling cocaine and marihuana from his house at 25 Chandler Drive where he resided with his wife and children. CRI-91 stated that he had purchased cocaine from "Bob" at this address on more than fifty occasions within three months up to, and including, within

five days of the application for the search warrant. CRI-91 stated that he had observed others purchasing drugs at 25 Chandler Drive. Additionally, CRI-91 stated that he had observed the defendant weighing and packaging large amounts of cocaine on more than a dozen occasions over the previous four months and as recently as five days prior to the application. According to CRI-91, the defendant packaged cocaine for sale in magazine "cut outs" and sold it at 25 Chandler Drive in varying quantities, including "eight-balls" (one-eighth of an ounce), one-half ounces, and ounces. The informant stated that the defendant delivered drugs to various locations and addresses around the Marshfield area. He also reported that the defendant stated in his presence on several occasions within three weeks prior to the application that he had a gun and would use it. CRI-91 has used cocaine on more than one hundred occasions, and he is familiar with the manner in which drugs are weighed, packaged, and sold.

Detective C.F. Teague checked by teletype on May 24, 1989, to verify the address of Robert Spano, whose Massachusetts driver's license listed his residence as 25 Chandler Drive. A check of the driver's license of the defendant's wife revealed her as listing the same address. Detective Teague conducted a Massachusetts "Board of Probation" check on the defendant's name and date of birth, which revealed a 1978 conviction on narcotic charges in Quincy. He called the Quincy police department to verify this information and learned that the defendant had been convicted of distribution of a class B substance on August 11, 1978, and sentenced to a house of correction.

On May 24, 1989, CRI-91 participated in a controlled buy from the defendant at 25 Chandler Drive. Subsequently, Detective Teague and Lieutenant Knight conducted surveillance of the defendant's house at 25 Chandler Drive, for a period of five months. They observed the defendant coming and going from the house. They also observed persons entering the house, staying for brief periods, and then leaving. Some of the people were known to them to be involved in either the sale or use of drugs, to have been convicted of the

use of drugs, or to have been identified by reliable informants as users of drugs. They continued to observe this sort of activity up to three days before the application.

On October 2, 1989, CRI-91 informed Lieutenant Knight that he had been at 25 Chandler Drive within the past forty-eight hours and that the defendant possessed drug paraphernalia including scales, grinders, and more than one-half ounce of cocaine. CRI-91 had observed the defendant selling cocaine from 25 Chandler Drive during the previous two days and on more than twenty-five occasions over the previous five months. As a result of the information obtained from the two informants, the controlled buy, additional observations by the police, investigation, and corroboration, the lieutenant applied for a search warrant. Based on the information, he believed that the defendant had been selling cocaine from 25 Chandler Drive.

The basic question for the magistrate, when evaluating an affidavit supporting an application for the issuance of a search warrant, is whether there is a substantial basis on which to conclude that the articles or activity described are probably present or occurring at the place to be searched. *Commonwealth* v. *Upton*, 394 Mass. 363, 370 (1985). Affidavits based on information from confidential informants are required under art. 14 of the Declaration of Rights to inform the magistrate of the underlying circumstances which support both the informant's basis of knowledge and his reliability or veracity. See *Spinelli* v. *United States*, 393 U.S. 410, 415 (1969); *Aguilar* v. *Texas*, 378 U.S. 108, 114 (1964); *Commonwealth* v. *Blake*, 413 Mass. 823, 826-828 (1992); *Commonwealth* v. *Montanez*, 410 Mass. 290, 299 (1991); *Commonwealth* v. *Upton*, *supra* at 375. Each prong of the *Aguilar-Spinelli* test must be separately satisfied. *Commonwealth* v. *Parapar*, 404 Mass. 319, 321-322 (1989). If either test fails, independent police corroboration may make up for the deficiencies. *Id.* at 322. *Commonwealth* v. *Upton*, *supra* at 375-376.

To assert, as the defendant does, that the affidavit fails the basis of knowledge test borders on the frivolous. The two in-

formants each observed sales of cocaine and marihuana by the defendant at 25 Chandler Drive on numerous occasions, and each purchased cocaine from the defendant at 25 Chandler Drive on more than twenty-five occasions with CRI-91 participating in a controlled buy. CRI-91 provided detailed information concerning the price, weight, and methods of packaging used by the defendant. CRI-91 purchased cocaine and observed sales of cocaine by the defendant within forty-eight hours of the application and observed drug paraphernalia in the house within five days of the date of the affidavit. Since the reported illegal activity continued to occur within forty-eight hours of the making of the affidavit, there is no basis for the claim that the information was stale or too remote to support the application. See *Commonwealth* v. *Reddington*, 395 Mass. 315, 323 (1985); *Commonwealth* v. *Burt*, 393 Mass. 703, 709-711 (1985); *Commonwealth* v. *DiStefano*, 22 Mass. App. Ct. 535, 540-541 (1986) (if criminal activity at place to be searched ongoing, earlier controlled buy retained its vitality for purpose of probable cause). The informant's personal observations which continued over several months up to within forty-eight hours of the making of the affidavit satisfy the basis of knowledge test. See *Commonwealth* v. *Montanez*, 410 Mass. 290, 300 (1991); *Commonwealth* v. *Carrasco*, 405 Mass. 316, 321 (1989); *Commonwealth* v. *Ramos*, 402 Mass. 209, 214 (1988); *Commonwealth* v. *Reddington, supra* at 322.

Neither is the veracity test unsatisfied. Independent police corroboration of information supplied by CRI-91 satisfies this prong. *Commonwealth* v. *Carrasco, supra* at 321-322. The police investigation not only included a controlled buy, but also confirmed that the defendant had a criminal history of drug dealing and that known drug users were visiting the premises. *Commonwealth* v. *Germain*, 396 Mass. 413, 418 & n.17 (1985) (magistrate may consider defendant's criminal history in determining probable cause). *Commonwealth* v. *Hall*, 366 Mass. 790, 798 (1975) (observations by police of suspected drug dealers and users briefly visiting premises supported credibility of informant's statements).

Furthermore, as the Commonwealth argues, statements of CRI-50 and CRI-91 constitute a declaration against their penal interests and, therefore, establish credibility. See *Commonwealth* v. *Parapar*, *supra* at 322, citing *Commonwealth* v. *Nowells*, 390 Mass. 621, 626 (1983). In the event that a person admits to criminal activity, an indicium of credibility attaches to the finding of probable cause to issue a search warrant. *United States* v. *Harris*, 403 U.S. 573, 583-584 (1971). There was ample support for a finding of probable cause by the magistrate; therefore the Superior Court judge properly denied the motion to suppress.

*Judgments affirmed.*