Fabricant, Judith, J.
The defendant is charged with trafficking in cocaine in an amount in excess of fourteen grams. He moves to suppress evidence seized as a result of a search of his apartment pursuant to a warrant. After hearing, and review of the affidavit in support of the warrant application, the Court concludes that the motion must be allowed, as the affidavit failed to provide probable cause to believe that contraband would be found in the defendant’s apartment.
THE CONTENTS OF THE AFFIDAVIT
On March 5, 2004, Canton Police Detective Paul Gallagher applied for and received a warrant to search the defendant’s apartment, located at 203 Britton Avenue, Stoughton, apartment 102.[1] In support of the application, he submitted an affidavit setting forth, in addition to his own substantial training and experience in narcotics investigations, the following information.
A confidential informant, identified by the pseudonym Beth, whose actual identity and address are known to the Canton police, provided information that a Richard McCarthy was selling cocaine to patrons at Matt Kelly’s Pub in Canton. Beth is reliable, the affi *125 davit asserts, because “Beth has not only provided [the Canton police) with information on drug activity in the past but has provided accurate information that led directly to the arrest of a narcotics dealer with an extensive criminal record and the seizure of narcotics and money.” Beth is familiar with the narcotics trade, having been involved in it, and has bought cocaine from McCarthy. Beth, according to the affidavit, “knows the source of the cocaine is John Littig of Stoughton. Beth has met Littig personally and knows he sells cocaine.”
The affidavit goes on to recite that Gallagher has known McCarthy for many years, would recognize him, has seen him in Matt Kelly’s Pub several times, and knows that he has been arrested for possession of cocaine. Further, the affidavit describes surveillance of McCarthy conducted by the Norfolk Couniy Drug Task Force, as follows:
Beth was able to provide when McCarthy was taking orders for cocaine inside the bar. He would leave to go buy the cocaine and come back and distribute the cocaine . . . After taking orders, we observed McCarthy get into the passenger side of a vehicle. McCarthy would recruit someone to drive him to pick up the cocaine . . . We followed the vehicles McCarthy was in to 203 Britton Ave. in Stoughton. Task Force members observed McCarthy enter Littig’s building. We know from our investigation McCarthy would meet with Littig. Littig was a familiar name to Task Force members. His name came up in numerous investigations in the past. Those investigations usually involved cocaine. I have personally been on surveillance in the past where the investigation has let to John Littig’s apartment. . . Littig has been charged with possession of a controlled substance and conspiracy to violate the Controlled Substance Act in the past.
The affidavit goes on to describe controlled buys, in which police would give Beth funds to make purchases from McCarthy. “Every time we placed an order, McCarthy would get a ride to Littig’s apartment. During the surveillance, McCarthy was not out of our sight. The only common denominator on the buys was John Littig. Littig and McCarthy were seen together. McCarthy would leave Littig’s and return to the bar and deliver the cocaine.”
Further, according to the affidavit, “[djuring the surveillance, there was a lot of pedestrian traffic in and out of Littig’s building. Some of the pedestrians were involved in other investigations involving cocaine. The person would enter Littig’s building and return outside a short time later. There was often someone waiting in the vehicle for the person to come out. I observed passengers get dropped off at the front door. The driver would park the vehicle and wait for the passenger to return moments later. This happened several times in the early evening hours. I know from my training and experience this was consistent with drug activity.”
DISCUSSION
On a motion to suppress a search pursuant to a warrant, “the judge may consider only the affidavit or affidavits presented to the magistrate . .. Subsequent oral testimony cannot be relied on to establish probable cause ... or to expand the officer’s knowledge.” Commonwealth v. Treadwell, 402 Mass. 355, 358 n.4 (1988) (internal quotations omitted). An affidavit in support of a warrant should be tested in a commonsense and realistic fashion, not in a hyper-technical manner. See Commonwealth v. Stewart 358 Mass. 747, 750 (1971). The “sufficiency of an affidavit is to be decided on the basis of a consideration of all of its allegations as a whole[.]” Id. at 750-51. Doubtful or marginal cases should be largely determined by the preference to be accorded to warrants. Id.
An affidavit in support of a search warrant application must “contain the facts, information and circumstances upon which [the affiant] relies to establish sufficient grounds for the issuance of the warrant.” G.L.c. 276, §2B. “To establish probable cause, an affidavit must allege sufficient facts and circumstances ‘for an issuing magistrate to determine that the items sought are related to the criminal activity under investigation, and that they reasonably may be expected to be located in the place to be searched.’ ” Commonwealth v. Truax, 397 Mass. 174, 178 (1986), quoting Commonwealth v. Cinellt 389 Mass. 197, 213, cert. denied, 464 U.S. 860 (1983); see also Commonwealth v. Upton, 394 Mass. 363, 370-71 (1985) (Upton II). In reviewing the sufficiency of the facts provided in such an affidavit, the essential question is “whether there is a substantial basis on which to conclude that the articles or activity described are probably present or occurring” in the place to be searched. Commonwealth v. Spano, 414 Mass. 178, 184 (1993).
A. The Aguilar-Spinelli Test
Under Article 14 of the Massachusetts Declaration of Rights, “[a]ffidavits based on information from confidential informants are required ... to inform the magistrate of the underlying circumstances which support both the informant’s basis of knowledge and his reliability or veracity.” Spano, 414 Mass. at 184, citing Spinelli v. United States, 393 U.S. 410, 415 (1969); Aguilar v. Texas, 378 U.S. 108, 114 (1964); see also Commonwealth v. Blake, 413 Mass. 823, 826-28 (1992); Commonwealth v. Montanez, 410 Mass. 290, 299 (1991). Each prong of the Aguilar-Spinelli testthe basis of knowledge and the veracity of the informantmust be satisfied separately, although independent police corroboration may make up for deficiencies on either prong. See Commonwealth v. Parapar, 404 Mass. 319, 321-22 (1989); Upton II, 394 Mass. at 375-76.
Here, where the affidavit relies on information from a confidential informant, the essential issue is whether the affidavit as a whole provided information sufficient for the magistrate reasonably to conclude *126 that probable cause existed to believe cocaine would be found in Littig’s apartment. See Upton II, 394 Mass, at 370 (“In each case, the basic question for the magistrate is whether he has a substantial basis for concluding that any of the articles described in the warrant are probably in the place to be searched . . . Strong reason to suspect is not adequate”) (citations omitted).
1. Reliability
The veracity or reliability of the informant can be established by facts demonstrating the informant has previously provided the police with reliable information that has led to arrest and conviction, see Commonwealth v. Byfield, 413 Mass. 426, 431 (1992), or to the seizure of drugs or other contraband. See Commonwealth v. Mejia, 411 Mass. 108, 113 (1991) (tip leading to recovery of contraband would satisfy veracity prong); Commonwealth v. Perez-Baez, 410 Mass. 43, 46 (1991) (tip led to arrest and seizure of drugs and money). That an informant has made statements against his or her own penal interest also tends to support reliability where the police know the informant’s true identity. Commonwealth v. Allen, 406 Mass. 575, 579 (1990); Parapar, 404 Mass. at 322.
Here, Beth had “provided accurate information that led directly to the arrest of a narcotics dealer with an extensive criminal record and the seizure of narcotics and money.” Although the affidavit does not indicate the outcome of the arrest referred to, the seizure of narcotics suffices to establish Beth’s reliability on that past occasion. Beth’s statements regarding her own purchases also support her reliability, where her identity and address were known to police. The affidavit thus meets the veracity requirement.
2. Basis of Knowledge
The basis of knowledge test examines how an informant knows what he or she claims to know. An informant’s tip “must not only come from a credible person, but he must be shown to be relying on something more than a casual rumor or an individual’s general reputation.” Commonwealth v. Avery, 365 Mass. 59, 63 (1974). The magistrate must be informed of some underlying circumstance on which the informant based his or her information. To meet this test, an informant may indicate either that he or she made direct observations of a defendant’s conduct, or that he or she heard the defendant acknowledge such conduct. See, e.g., Spano, 414 Mass. at 185 (informants observed drug sales and purchased drugs from defendant at listed address); Commonwealth v. Crawford, 410 Mass. 75, 78-79 (1991) (informant learned directly from defendant of his plans to buy cocaine); Commonwealth v. Lapine, 410 Mass. 38, 41 (1991) (informant overheard conversation between defendant and two men disclosing they committed burglary).
On this issue, the affidavit in this case falls short. The statements that Beth “knows the source of the cocaine is John Littig” and that she “has met Littig personally and knows he sells cocaine” do not suffice. These statements provide nothing to indicate how Beth knows, in what context she has met him, what she has observed him doing, or what she has heard him say.
In some instances, an affidavit may overcome the absence of an express statement of the basis of an informant’s knowledge by setting out information provided by the informant that is so detailed and precise as to permit the magistrate to infer that the informant had first-hand knowledge. See Commonwealth v. Alvarez, 422 Mass. 198, 207 (1996) (“The promptness of the information, the specificity of the observations, and the particularity of the detail as to location permitted the inference that the informant saw the drugs at the precise place stated or saw them being carried into the ... apartment”). That is not the case here. The affidavit provides nothing from Beth regarding this defendant beyond bald assertions. These support no inference as to the basis of her knowledge, and indeed may well be “the type of information which may have been picked up as a rumor in a bar.” Commonwealth v. Atchue, 393 Mass. 343, 348 (1984), quoting United States v. Spach, 518 F.2d 866, 870 (7th Cir. 1975).
B. Independent Corroboration
Independent police corroboration may fill a gap in either prong of the Aguilar-Spinelli test. Spano, 414 Mass. at 185. The affidavit here offers two forms of corroboration: (1) information on the defendant’s prior criminal histoiy; and (2) police investigation and surveillance of McCarthy and of pedestrian activity at the defendant’s apartment building.
1. Defendant’s Criminal Histoiy
“A defendant’s criminal histoiy may be factored into a probable cause determination as corroboration of an informant’s tip, but only if the histoiy is sufficiently recent and similar to the crime charged to demonstrate that 'the defendant was not averse’ to committing such a crime.” Allen, 406 Mass. at 579, quoting Commonwealth v. Germain, 396 Mass. 413, 418 n.7 (1985).The information provided in the affidavit here does not meet that standard. The statement that “Littig has been charged with possession of a controlled substance and conspiracy to violate the Controlled Substance Act in the past” adds nothing from which a magistrate could draw any relevant inference, beyond that police have suspected this defendant before. The statement does not indicate when the defendant was so charged, how the charges were resolved, whether drugs were seized, if so whether the quantity was such as to suggest distribution, or any other details that might provide corroboration. See Commonwealth v. Desper, 419 Mass. 163, 167 (1994) (arrests of uncertain outcomes and convictions of “uncertain vintage” did not bolster reliability); Allen, 406 Mass. at 579; Upton II, 394 Mass. at 371. Compare Germain, 396 Mass. at 417-18 & n.7 (affidavit states details of defendant’s extensive criminal record).
*127 2. Police Investigation and Surveillance
The affidavit provides information, detailed above, indicating police corroboration of drug transactions by-McCarthy, as well as observations of McCarthy visiting the defendant’s building at times when McCarthy appeared to be obtaining cocaine for distribution. The police also observed pedestrian traffic in and out of the building, suggestive of drug sales occurring somewhere in the building. What remains missing, however, is any information narrowing in on the defendant or his apartment. See Allen, 406 Mass. at 579; Commonwealth v. Grinkley, 44 Mass.App.Ct. 62, 70-71 (1997) (insufficient corroboration where no nonobvious predictive details or criminal conduct observed); Commonwealth v. Motta, 34 Mass.App.Ct. 921, 922 (1993) (no specific details about defendant).
Notably absent from the affidavit is any indication of the size of the building or the number of units in it. Nor is there anything to indicate that the police ever observed McCarthy while he was inside the building, or had any other information from which to draw a conclusion as to where he went inside the building.[2] Compare Commonwealth v. Rice, 47 Mass.App.Ct. 586, (1999) (controlled buy of drugs where informant is in sight until she enters and leaves a detached garage next to a single-family home). Similarly, nothing in the affidavit indicates where in the building the pedestrians went during their brief visits. Thus, a “fundamental flaw’’ in this affidavit is that it “does not explain why there was probable cause to believe that drugs or related evidence would be found at [apartment 102] other than it being the residence of the defendant.” Commonwealth v. Smith, 57 Mass.App.Ct. 907, 908 (2003) (rescript); see Commonwealth v. O’Day, 56 Mass.App.Ct. 833, 840 (2002); compare Commonwealth v. Carrasco, 405 Mass. 316, 322 (1993) (informant’s observation of heroin sold in apartment bolstered by police observation of vehicle, predicted by informant, driven to apartment by individual known to police as a heroin dealer); Commonwealth v. Valdez, 402 Mass. 65, 71 (1988) (informant personally saw drugs in the defendant’s apartment prior to controlled buy with surveillance limited to building exterior).
The other statements appearing in the affidavit about the defendantthat his name was “familiar” to the Task Force and had “come up” in prior investigations, that investigations “led to Littig’s apartment,” and that the “only common denominator on the buys was Littig”are simply too vague to provide corroboration. Likewise, the statements that the police knew from their investigation that “McCarthy would meet with Littig,” and that McCarthy and Littig “were seen together" do not cure the defect. The affidavit does not indicate how the police knew that the two would meet, or who saw them together, when, or under what circumstances. Considered as a whole and in a commonsense manner, the affidavit does not provide sufficient facts from which a magistrate could find probable cause to believe that cocaine would be found in Littig’s apartment.
CONCLUSION AND ORDER
For the reasons stated, it is hereby ORDERED that the defendant’s Motion to Suppress Evidence is ALLOWED.

 Counsel have provided a copy of the supporting affidavit, but not of the warrant. Defendant’s memorandum states that the warrant described the premises to be searched as follows: “A multi-family, multi-level dwelling located at 203 Britton Avenue, Apartment 102, in Stoughton, Massachusetts. The dwelling is yellow brick on the exterior with green awnings above the main entrances. The # 203 in (is) inscribed in white on the green awning. When entering the dwelling from the parking lot, apartment #102 is up one flight of stairs and is the first apartment on the right. The door is beige with #102 on it.”

 Although the affidavit says that “[djuring the surveillance, McCarthy was not out of our sight,” it does not say that the police ever entered the building, that they ever observed McCarthy inside the building, or that they ever saw him enter Littig’s apartment. In context, the only reasonable interpretation of that statement is that McCarthy was not out of sight of the police except while he was inside the building.