## COMMONWEALTH *vs.* GREGORY TAKVORIAN.

No. 08-P-1814.

Essex. October 15, 2009. - December 7, 2009.

Present: Lenk, Green, & Trainor, JJ.

*Practice, Criminal,* Warrant, Affidavit. *Search and Seizure,* Warrant, Affidavit, Probable cause. *Constitutional Law,* Search and seizure, Probable cause. *Probable Cause. Controlled Substances.*

A Superior Court judge erred in allowing a criminal defendant's pretrial motion to suppress evidence seized by police at the defendant's residence pursuant to a search warrant, where the affidavit submitted in support of the application for the warrant furnished probable cause to believe that evidence of illegal activity (i.e., the dispensing of substances intended for hypodermic use) would be found at that location. [838-841]

Indictment found and returned in the Superior Court Department on August 16, 2006.

A pretrial motion to suppress evidence was heard by *Howard J. Whitehead,* J.

An application for leave to prosecute an interlocutory appeal was allowed by *Robert J. Cordy,* J., in the Supreme Judicial Court for the county of Suffolk, and the case was reported by him to the Appeals Court.

*Kenneth E. Steinfield,* Assistant District Attorney, for the Commonwealth.

*Carmine P. Lepore* for the defendant.

Green, J. The Commonwealth appeals from an interlocutory order of the Superior Court, suppressing evidence seized pursuant to a search warrant.[1] The motion judge suppressed the evidence based on his conclusion that the affidavit submitted in

---

[1] A single justice of the Supreme Judicial Court authorized the Commonwealth's appeal, pursuant to Mass.R.Crim.P. 15(a)(2), as appearing in 422 Mass. 1501 (1996).

support of the application for the warrant did not furnish probable cause to believe that evidence of illegal activity would be found at the location specified in the application. We reverse.

*Background.* On January 16, 2006, a clerk magistrate of the District Court issued a search warrant in response to an application filed by Detective Scott C. Richards of the Peabody police department. In an affidavit accompanying the application, Detective Richards described the following particular circumstances giving rise to the request. On the evening of January 16, 2006, Sergeant Cook of the Peabody police department, while in uniform and driving a marked police cruiser, stopped an automobile driven by the defendant with an expired license plate.[2] Sergeant Cook approached the vehicle, asked the driver (the defendant) for his license and registration, and informed him that he was going to have the vehicle towed for having an expired registration. While speaking to the defendant, Sergeant Cook observed two large plastic tote containers sitting on the back seat of the vehicle. Cook observed, in plain view, vials and vial tops inside the top container. Cook asked the defendant what he had in the containers, and the defendant replied that "he was a chemist and that he runs a business and a lab out of his house selling performance products." The defendant further informed Cook that he had needles and drugs in the containers and that he had prescriptions for them. Cook informed the defendant that he did not want to tow the vehicle with chemicals and drugs inside, and asked the defendant to remove the plastic containers from the vehicle so that he, the defendant, could take them home with him. When the defendant removed the containers from the vehicle, Sergeant Cook observed "additional empty vials, covers for the vials, strainers, a bottle of D-Bol, a bottle Benzyl-Benzoate [*sic*], Polysorbate 80, and other bottles of chemicals." Detective Richards's affidavit continued, "[w]ith Sergeant Cook's training and experience as a police officer the items observed appeared consistent with steroids." One of the containers also contained a piece of mail addressed to 12 America Drive, in Peabody.[3]

While Sergeant Cook was engaged with the defendant, another

---

[2]In response to a radio request, a police dispatcher confirmed that the vehicle registration was in fact expired.

[3]The affidavit erroneously described the addressee on the envelope as an entity named "Performance Enhancing Products" when the addressee was, in

police officer (Zawacki) was conducting an inventory search of the front seat area of the vehicle. In a silver container inside a black pouch on the front console, Officer Zawacki found five eighty-milligram Oxycontin pills. Officer Zawacki also found a bag containing several hypodermic needles under the front driver's seat. The defendant was placed under arrest for possession of a class B controlled substance (Oxycontin), and his car was impounded and towed.

On the basis of the foregoing information, Detective Richards's affidavit stated that "there is probable cause to believe that Oxycontin, steroids, various chemicals used in the production and manufacturing of steroids and other performance enhancing drugs as well as associated paraphernalia, equipment and implements can be found in or around the residence located #12 America Drive, Peabody, MA."

*Discussion.* Under the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights, a search warrant may issue only on a showing of probable cause. See *Commonwealth* v. *Valerio*, 449 Mass. 562, 566 (2007). In evaluating whether a warrant application establishes probable cause, our inquiry "always begins and ends with the 'four corners of the affidavit.' " *Commonwealth* v. *O'Day*, 440 Mass. 296, 297 (2003), quoting from *Commonwealth* v. *Villella*, 39 Mass. App. Ct. 426, 428 (1995). See *Commonwealth* v. *Cefalo*, 381 Mass. 319, 328-330 (1980). "To establish probable cause to search, the facts contained in an affidavit, and reasonable inferences that may be drawn from them, must be sufficient for the magistrate to conclude 'that the items sought are related to the criminal activity under investigation, and that they reasonably may be expected to be located in the place to be searched at the time the search warrant issues.' " *Commonwealth* v. *Walker*, 438 Mass. 246, 249 (2002), quoting from *Commonwealth* v. *Donahue*, 430 Mass. 710, 712 (2000).

"In dealing with probable cause . . . we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent

---

fact, "Performance Analysis, Incorporated." The motion judge ruled that the error constituted a reckless misstatement of a material fact pursuant to *Franks* v. *Delaware*, 438 U.S. 154 (1978). Our view of the case makes it unnecessary to evaluate the propriety of that ruling.

men, not legal technicians, act." *Commonwealth* v. *Hason,* 387 Mass. 169, 174 (1982), quoting from *Brinegar* v. *United States,* 338 U.S. 160, 175 (1949). See generally Grasso & McEvoy, Suppression Matters Under Massachusetts Law § 8-1 (2009-2010 ed.). Accordingly, search warrant affidavits are to be interpreted in a realistic and commonsense manner, and should be "read as a whole, not parsed, severed, and subjected to hypercritical analysis." *Commonwealth* v. *Donahue, supra,* quoting from *Commonwealth* v. *Blake,* 413 Mass. 823, 827 (1992). See *Commonwealth* v. *Stewart,* 358 Mass. 747, 751 (1971). A showing of probable cause in support of a search warrant does not require definitive proof of criminal activity. See *Commonwealth* v. *Spano,* 414 Mass. 178, 184-185 (1993). Instead, "[t]he basic question for the magistrate, when evaluating an affidavit supporting an application for the issuance of a search warrant, is whether there is a substantial basis on which to conclude that the articles or activity described are *probably* present or occurring at the place to be searched" (emphasis added). *Id.* at 184. A reviewing court gives considerable deference to the magistrate's determination of probable cause, see *Commonwealth* v. *Upton,* 394 Mass. 363, 377 (1985), and even "the resolution of doubtful or marginal cases . . . should be largely determined by the preference to be accorded to warrants." *Commonwealth* v. *Germain,* 396 Mass. 413, 418 (1985), quoting from *United States* v. *Ventresca,* 380 U.S. 102, 109 (1965).

We agree with the Commonwealth that Detective Richards's affidavit was sufficient to establish probable cause to search the defendant's residence at 12 America Drive. The defendant contends that the affidavit was deficient because it did not advise that any of the steroids found in the tote container are illegal, and because the question whether any of them are illegal is not a matter of common knowledge.[4] See *Commonwealth* v. *Taglieri,* 378 Mass. 196, 198-199, cert. denied, 444 U.S. 937 (1979) (affiant must explain inferences that do not follow from com-

---

[4]Though the affidavit did not specify which of the steroid substances found are illegal, the parties appear to agree that, of the three steroid substances found in the defendant's car, the substance identified in the affidavit as "D-Bol" is an illegal substance. However, neither the affidavit nor the parties' briefs identify what the term "D-Bol" denotes, and we agree with the defendant that its illegality is not a matter of common knowledge.

mon sense; "issuance of a warrant . . . should not turn on who the magistrate is or how much special knowledge he may have"); *Commonwealth* v. *Byfield*, 413 Mass. 426, 429-430 (1992).[5] The argument is beside the point, however. Under G. L. c. 112, § 30, amended by St. 1974, c. 326, § 1, it is illegal for any person other than a pharmacist (or certain others described therein) to "dispense any controlled substance or *any substance intended for hypodermic use*" (emphasis added). The defendant's admission that he ran a business out of his home manufacturing and selling "performance products," combined with (i) his statement that the tote containers had "needles and drugs" in them, (ii) the presence of empty vials and vial covers in the containers along with other filled vials,[6] and (iii) the presence of hypodermic needles under the driver's seat, suggested a probability that the defendant was engaged in the illegal activity of dispensing substances intended for hypodermic use.[7]

We also reject the defendant's contention that the information

[5]The Commonwealth suggests that the illegal nature of performance-enhancing steroids is a matter of common knowledge, in the wake of highly publicized scandals in various professional and amateur sports in recent years. The reference is inapposite, as many of the substances banned in sports competitions are not illegal and, indeed, even substances banned in one sport may not be banned in another. Similarly inapposite is the Commonwealth's reliance on *State* v. *Raymer*, 786 S.W.2d 15, 16 (Tex. Ct. App. 1990); in that case, the illegality of the described substances was plainly apparent from the four corners of the affidavit submitted in support of the warrant application (which described the label on a vial as containing the legend "CAUTION: Federal (USA) law prohibits dispensing without prescription"). More closely similar to the present case is another case cited by the Commonwealth. In *Combs* v. *State*, 271 Ga. App. 276, 277 (2005), the arresting "officer testified that, in his professional experience, steroids are not lawfully administered through injection except in a doctor's office." In the present case, the illegality of dispensing substances intended for hypodermic injection is established by statute, rather than by means of the officer's expert opinion expressed in the affidavit. See G. L. c. 112, § 30.

[6]Though Detective Richards's affidavit did not specify that the vials contained liquids, his reference to "vials" (a term which, under its common dictionary definition, refers to "a small container, usually with a closure, used especially for liquids") supports that inference. American Heritage Dictionary of the English Language 1914 (2006).

[7]We are unpersuaded by the suggestion that the location of the hypodermic needles served to disconnect them from the vials held in the tote containers. The defendant's own statement, expressing his belief that the needles were in the tote containers, was adequate to connect the vials to the hypodermic needles for purposes of probable cause.

contained in the affidavit furnished an inadequate nexus between the defendant and the residence located at 12 America Drive in Peabody. First, as we have observed, one of the tote containers held, alongside the vials, an envelope addressed to that location. Moreover, the arresting officer had examined the defendant's license, and Detective Richards described the same location as the defendant's residence on the warrant application form itself (which Detective Richards signed under the pains and penalties of perjury). See *Commonwealth* v. *McRae*, 31 Mass. App. Ct. 559, 561-563 (1991). The sworn information before the magistrate included information sufficient to identify 12 America Drive, Peabody, as the defendant's address.

*Order allowing motion to*
*suppress reversed.*